**Subhash C. MALHOTRA,**
**Plaintiff–Appellant,**

v.

**COTTER & COMPANY,**
**Defendant–Appellee.**

**No. 88–2880.**

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1989.
Decided Sept. 12, 1989.

John L. Gubbins, Gubbins & Associates, Chicago, Ill., Vincent Zamar, for plaintiff-appellant.

Keck, Mahin & Cate, Chicago, Ill., for defendant-appellee.

Before CUDAHY, POSNER, and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

Subhash Malhotra, an accountant of Indian birth and ancestry, brought this suit in 1986 against his former employer, Cotter & Company (a distributor of tools). The suit charged ethnic discrimination, in violation of both 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964) and 42 U.S.C. § 1981 (Civil Rights Act of 1866). The district judge granted Cotter's motion for summary judgment and dismissed the suit. 696 F.Supp. 1203 (N.D.Ill.1988). After oral argument of Malhotra's appeal, the Supreme Court decided *Patterson v. McLean Credit Union,* — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which narrows the interpretation of section 1981.

■ Malhotra, a C.P.A., had first gone to work for Cotter in 1978 as an auditor. According to the administrative charge that he filed in 1985, kicking off this litigation, between 1979 and 1984 Cotter on ten separate occasions refused, because of Malhotra's Indian ancestry, to promote him. Although the parties describe the charge as one of racial discrimination, it is more accurately described as a charge of discrimination based on color, ethnicity, or national origin, rather than on race, since Indians are Caucasians. But the precise characterization makes no difference in this case. Section 1981 protects persons colloquially described as "nonwhites" even when technically they are Caucasians, *St. Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), while Title VII forbids discrimination on the basis of national origin and ethnicity as well as on the basis of race or color. It is true that Title VII's defense of bona fide occupational qualification, 42 U.S.C. § 2000e–2(e)(1), available in cases of discrimination on the basis of sex or national origin, is unavailable where discrimination is based on race, color, or ethnicity. But Cotter did not raise such a defense. And notice that Title VII groups discrimination on grounds of race with discrimination on grounds of color; although Indians are Caucasians, they are generally of darker skin color than "white" Americans.

■ Malhotra was finally promoted in 1986. However, according to his complaint (rather than his administrative charge, which had been filed before his promotion), Malhotra's new supervisor harassed Malhotra by dumping papers on his desk, by humiliating him in front of his secretary, and by forbidding the secretary to photocopy his work. Malhotra contends that the supervisor's acts amounted to racial harassment. Such harassment can be actionable under Title VII, see, e.g., *Nazaire v. Trans World Airlines, Inc.,* 807 F.2d 1372, 1380–81 (7th Cir.1986), but not every act of harassment of a person who happens to belong to a racial minority or other protected group violates the statute. A member of such a group has no right to have a more congenial working environment than a white male, and therefore he can complain only about harassment that is discriminatory in character or purpose. The acts of a supervisor, moreover, are not automatically attributed to the company. See *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). But as we explain, it will not be necessary to decide whether Malhotra has stated a claim of racial harassment.

In 1987, after the filing of this suit, Cotter fired Malhotra—in retaliation, the complaint alleges, for the Title VII administrative charge that Malhotra had filed in 1985. The amended complaint that the district judge dismissed alleges retaliation in violation both of Title VII's retaliation provision, 42 U.S.C. § 2000e–3(a), and of section 1981, as well as repeating the other charges.

■ The principal grounds on which Cotter had urged summary judgment were procedural: the 300–day (sometimes but not here 180–day) statute of limitations in Title VII for filing the administrative charge, see 42 U.S.C. § 2000e–5(e); the two-year borrowed statute of limitations applicable to section 1981, see *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), and Ill.Rev. Stat. ch. 110, ¶ 13–202; and Malhotra's fail-

ure to mention either racial harassment or retaliatory dismissal in his administrative charge. However, Cotter also filed a substantive affidavit in support of the motion for summary judgment. The affidavit, signed by the officer in charge of finance and accounts receivable, concerned two of the denials of promotion to Malhotra. One was Cotter's refusal—late in 1984, less than 300 days before the filing of the administrative charge—to appoint Malhotra to the position of Finance Manager. Malhotra believed himself better qualified for the position than Thomas Sweenie, who received the appointment, because Malhotra was a C.P.A. and Sweenie was not, and because Malhotra had audited the Finance Department. Cotter's affidavit explained, however, that Sweenie—who had an M.B.A. in finance from Northwestern University and had been acting manager of the Finance Department for six months before he received the permanent appointment— was better qualified for a managerial position (especially for the managerial position that he already held on an acting basis) than an accountant would be, because the position required managerial rather than auditing or accounting skills. Malhotra did not attempt to meet this evidence head-on but instead presented exceptionally weak, indeed largely false, evidence to show that Cotter's real reason for preferring Sweenie was ethnic bias—evidence such as Cotter's having no members of minority groups in managerial positions. Actually it has eleven. No rational trier of fact could have inferred that prejudice was a factor in denying Malhotra promotion to Finance Manager.

■ The other issue that the substantive affidavit addressed was Cotter's refusal in 1983 to appoint Malhotra to the position of Accounts Receivable Manager. This refusal took place more than 300 days before Malhotra filed his administrative charge and more than two but less than five years before he filed his suit. The affidavit attests that Malhotra was not promoted because he was not as well qualified as the person whom the affiant did appoint to the position. The statement is brief and conclusional, and we have remarked in another context that conclusional statements in affidavits "are entitled to little weight in deciding whether to grant" a motion for summary judgment. *Products Liability Ins. Agency, Inc. v. Crum & Forster Ins. Cos.*, 682 F.2d 660, 662 (7th Cir.1982). We said "little" weight—not zero weight. Malhotra calls the statement in Cotter's affidavit a "shred." This is argument by epithet. Malhotra has provided us with no authority or reason for giving the statement no weight, and in the district court he submitted no evidentiary materials to rebut the statement. Cotter's affidavit named the person who was appointed Accounts Receivable Manager in Malhotra's stead, and Malhotra could have presented evidence that that person was not as well qualified as he. He did not respond to the affidavit, and as a result again failed to create a triable issue.

■ None of the denials of promotion except with regard to the Finance Manager's job occurred within two years prior to the filing of Malhotra's complaint; are they therefore time-barred by virtue of the Supreme Court's decision in *Goodman v. Lukens Steel Co., supra*? We declined to apply the Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (see also *Owens v. Okure*, —— U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989))—which adopted state personal-injury statutes of limitations for use in section 1983 suits and clearly presaged *Goodman*—retroactively, because of clear precedent in this circuit allowing Illinois plaintiffs five years to bring such suits. *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986). Equally clear precedent had given section 1981 plaintiffs five years, see *Waters v. Wisconsin Steel Works*, 427 F.2d 476 (7th Cir.1970), and after oral argument in the present case we held that *Goodman* like *Garcia* would not be applied retroactively. *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1326–28 (7th Cir.1989). The adoption of a statute of limitations is no less legislative when done by a court than when done by a legislature, and until the handwriting on the wall is unmistakable plaintiffs should be able to rely on the

previous limitations period. So Malhotra may reach back five years before the filing of his complaint. Four of the ten denials of promotion occurred within that five-year period. Two, involving the Finance Manager position and the Accounts Receivable Manager, Cotter successfully defended against in its substantive affidavit, as we have seen. However, with respect to the other two, Cotter staked its all on persuading the district court and us to apply the two-year rather than five-year statute of limitations.

The remaining six denials of promotion took place more than five years before the filing of the complaint. With respect to them the question of limitations is whether Malhotra may reach back that far on a theory of "continuing violation." As an original matter we might have some doubts; such banking of grievances could turn an employment discrimination suit into an inquest on the employee's entire employment history with the defendant. We know from *Lorance v. AT & T Technologies, Inc.*, —— U.S. ——, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), and the cases cited in that opinion, that Title VII's statute of limitations begins to run when the employer implements a discriminatory policy (or the plaintiff is hired by an employer who has such a policy in force), even if its effects are not felt until many years later. These decisions express a strong preference for prompt adjudication of employment grievances, but do not read directly on the principle of *Stewart v. CPC International, Inc.*, 679 F.2d 117, 121 (7th Cir. 1982) (per curiam), that no part of a continuing violation *which persists into the period within which suit is allowed* is time-barred. See also *Nazaire v. Trans World Airlines, Inc.*, *supra*, 807 F.2d at 1377–79; cf. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81, 102 S.Ct. 1114, 1125–26, 71 L.Ed.2d 214 (1982). The qualification is essential. There must be a violation within the period of the statute of limitations. *Young v. Will County Department of Public Aid*, 882 F.2d 290, 293 (7th Cir.1989). If, having proved such a violation, the plaintiff goes on to prove that it began earlier and that its earlier manifes-

tation caused him additional injury, he can obtain a remedy for the increment as well as for the injury inflicted by the recent violation. This is nothing special to section 1981; it is a general principle of our law. See, e.g., *Taylor v. Meirick*, 712 F.2d 1112, 1118–19 (7th Cir.1983).

But what exactly does it mean to say that a violation "began" before the statutory period? Here as in most cases there are discrete violations—separate failures to promote. What justifies treating a series of separate violations as a single continuing violation? Only that it would have been unreasonable to require the plaintiff to sue separately on each one. In a setting of alleged discrimination, ordinarily this will be because the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory mistreatment. See *Glass v. Petro–Tex Chemical Corp.*, 757 F.2d 1554 (5th Cir. 1985). The district judge did not address the question whether this condition had been satisfied here. The reason is that although he anticipated *Smith v. Firestone Tire & Rubber Co.* and therefore properly refused to apply *Goodman* retroactively, he nevertheless granted summary judgment on all the claims of discrimination in promotion, including those that Cotter had not rebutted on the merits, on the ground that Malhotra had not produced enough evidence to justify a finding that the denial of any of the promotions was due to Malhotra's ancestry. He thought in other words that Malhotra had not reached the threshold of showing discrimination. But it was not Malhotra's burden to produce evidence concerning claims as to which Cotter's sole ground for summary judgment was the statute of limitations. When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not. See *Bonilla v. Nazario*, 843 F.2d 34, 37 (1st Cir.1988); *John Deere Co. v. American National Bank*, 809 F.2d 1190, 1192 (5th Cir.1987). Except with regard to the two denials of promotion that did evoke affidavits from

Cotter containing evidence that discrimination had not figured in those denials, it was enough for Malhotra to argue—as he did, and successfully—that his claims were timely.

Malhotra is therefore entitled to a remand on all but two of his failure-to-promote claims—provided that claims of racially motivated denial of promotion based on section 1981 survive *Patterson v. McLean Credit Union.* As Title VII claims, they are time-barred; so without the five-year statute of limitations for section 1981 claims, Malhotra is lost (so far as the denials of promotion are concerned). Some claims of racially discriminatory denials of promotion do survive *Patterson*; others do not. It is uncertain where Malhotra's fit.

Noting the statutory language "the same right [as white people] ... to make ... contracts," the Supreme Court held in *Patterson* that "the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981. Cf. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (refusal of law firm to accept associate into partnership) (Title VII)." 109 S.Ct. at 2377. The Court's reference to contract and its citation to *Hishon* suggest that in deciding whether a promotion would create "a new and distinct relation between the employee and the employer," the focus of inquiry should be on whether the promotion would change the terms of the contractual relationship between the employee and the employer.

■ Another interpretation of *Patterson* may be possible, however, and it would lead to a broader right of action. This interpretation emphasizes the anomaly created by a rule that a stranger to the firm could sue under section 1981 if his application for a position was turned down on racial grounds but a person already em-ployed by the firm could not sue even though his application for the identical position was turned down on the identical grounds. Viewed in this light the "new and distinct relation" test would distinguish such a case from one where promotion was the sort of routine advancement that only existing employees qualify for. To get an in-grade promotion in federal employment, for example, you must already be a federal employee, and the "promotion" is a raise, rather than a transfer to a new job. Complaints about discrimination in routine "promotions" of this sort can no longer be litigated under section 1981. That much is clear whatever the exact meaning of *Patterson*; and it also is clear that some in-house promotions are actionable, for *Hishon* was such a case. But to decide whether, for example, the refusal to promote Malhotra to the position of Finance Manager was actionable would require choosing between the alternative interpretations of *Patterson*, for on the one hand the job applied for was one that could well have been filled by someone not already working for the firm, while on the other hand the promotion would not, so far as appears, have changed the terms of Malhotra's express or implied contract with Cotter. And likewise with the denial of promotion to Accounts Receivable Manager. Therefore if "new and distinct relation" means "new and distinct *contractual* relation," Malhotra would be out of luck with regard to these two promotions even if he had proved discrimination.

■ This appeal does not imperatively require us to decide whether the "new and distinct relation" test embraces promotions which, while nonroutine, involve no change in the terms of the express or implied contractual relationship between employee and employer. The record does not reveal whether any of the promotions that Malhotra sought would have created a new and distinct relation between him and his employer under any reading of *Patterson*. Indeed the record contains virtually no evidence regarding eight of the ten promotions sought—the eight that are still alive in this litigation. Whether the denial

of these promotions is actionable under *Patterson* will be an issue for the district judge to consider on remand—and an issue that may never have to be resolved, since like the claims regarding the positions of Finance Manager and Accounts Receivable Manager these claims may prove to have no merit however *Patterson* is interpreted.

We show no disrespect to the Supreme Court by suggesting that the scope of *Patterson* is uncertain. The glory of the Anglo–American system of adjudication is that general principles are tested in the crucible of concrete controversies. A court cannot be assumed to address and resolve in the case in which it first lays down a rule every controversy within the semantic reach of the rule.

With regard to the claim of racial harassment we agree with the district judge that Malhotra was barred from raising this claim under Title VII because he had not mentioned it in his administrative charge. The charge he filed in 1985—the *only* charge he filed—pertained to an earlier time period, a different form of discrimination (failure to promote), and different employees of Cotter. The new claim was too remote. *Hemmige v. Chicago Public Schools,* 786 F.2d 280, 283 (7th Cir.1986). The failure to file a new administrative charge would of course not bar the claim under section 1981, but *Patterson*'s central holding is that racial harassment is *not* actionable under that statute. See also *Lynch v. Belden & Co.,* 882 F.2d 262, 266 (7th Cir.1989); *Brooms v. Regal Tube Co.,* 881 F.2d 412, 424 (7th Cir.1989). Although in *Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417, 1421–22 (7th Cir.1986), we assumed (the parties having agreed) that racial harassment is actionable under section 1981, that assumption has been overthrown by *Patterson.*

The last issue is retaliation. Again Malhotra failed to file a Title VII administrative charge, but this time the omission was not fatal. *Hemmige v. Chicago Public Schools, supra,* 786 F.2d at 283, assumes without quite holding that the judicial complaint in a Title VII case can embrace not only the allegations in the administrative charge but also " 'discrimination like or reasonably related to the allegations of the charge and growing out of such allegations,' " specifically including retaliation for the filing of the charge. See also *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 545 n. 2 (7th Cir.1988). A number of cases in other circuits so hold. See *id.* at 545 n. 2 (citing cases); also *Brown v. Hartshorne Public School District #1,* 864 F.2d 680, 682 (10th Cir.1988). We may assume this to be the law and we add that there is a practical reason for treating retaliation in this way: having once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation. That is not a consideration in this case, where the alleged act of retaliation consisted of firing Malhotra; there was nothing more that Cotter could do to him if he filed another administrative charge. But it is best to have a general rule, and we join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge.

It could be argued that, like harassment, retaliation is actionable only under Title VII and not under section 1981. In distinguishing between refusing to hire (or, in some cases, refusing to promote) a person on grounds of race, and mistreating him— even to the extent of breaking the employment contract—after he has been hired, *Patterson* might be thought to foreclose any suggestion that retaliation could be actionable under that statute. Moreover, retaliation and discrimination are separate wrongs. A white person who opposes discrimination against blacks and is fired in retaliation for doing so is not being discriminated against because of his race, see *Eichman v. Indiana State University Board of Trustees,* 597 F.2d 1104, 1107 (7th Cir.1979); *International Woodworkers of America v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1270 (4th Cir.1981), just as a railroad worker who is fired for

filing a complaint under the Federal Employers Liability Act cannot claim that the retaliation is itself a violation of that Act. See *Graf v. Elgin, Joliet & Eastern Ry.*, 697 F.2d 771, 775 (7th Cir.1983), and cases cited there; *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1050 (7th Cir.1983); *Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 815 (7th Cir.1985).

 Title VII does not treat retaliation as a form of discrimination; it contains a separate provision forbidding retaliation. Section 1981, with which we are concerned here, contains no such provision, and merely entitles nonwhites to the same treatment as whites. Had a white person filed a charge on behalf of Malhotra, presumably he would have been fired too, if Malhotra is right that Cotter is determined to punish those who bring down the wrath of the law on its head. It is not true that "a retaliatory response by an employer against [an employee] who genuinely believed in the merits of his or her complaint would inherently be in the nature of a racial situation." *Setser v. Novack Investment Co.*, 638 F.2d 1137, 1146, modified on other grounds, 657 F.2d 962 (8th Cir.1981) (en banc). An employer could have a policy of firing any employee who made legal trouble for it on any ground.

 Against all this it can be argued that someone who retaliates against a person who has a claim of employment discrimination that might be actionable under section 1981 (and Malhotra may have such a claim, based on the denial of promotions that he sought) is interfering with that person's *ability* to make or enforce contracts on the same footing with white persons, cf. *Patterson v. McLean Credit Union, supra*, 109 S.Ct. at 2373, and such interference could be thought itself a violation of section 1981. *Goodman v. Lukens Steel Co., supra*, holds that section 1981 "do[es] not permit a union to refuse to file any and all grievances presented by a black person on the ground that the employer looks with disfavor on and resents such grievances." 107 S.Ct. at 2625. In other words, section 1981 forbids a union to yield to a racially motivated threat of retaliation.

There is a substantial body of court of appeals precedent (nothing in this circuit, though) that section 1981 forbids retaliation, see, e.g., *Choudhury v. Polytechnic Institute*, 735 F.2d 38, 43 (2d Cir.1984); *Goff v. Continental Oil Co.*, 678 F.2d 593, 598 (5th Cir.1982); it may well survive *Patterson*. But that is another question we need not answer today. Cotter submitted to the district court affidavits to the effect that Malhotra had been fired because of poor job performance, rudeness, and other failures unrelated to his filing charges of discrimination against Cotter. Malhotra offered no rebuttal and thereby failed to create a triable issue. So even though the failure to file a second administrative charge was not fatal to Malhotra's Title VII retaliation claim, that claim was properly dismissed; and whether or not such a claim could be based on section 1981, Malhotra's claim has no merit.

As the plethora of opinions in this case attests, federal employment discrimination law has become exceedingly complex. In part this is because of the overlap between statutes—Title VII and section 1981—passed in different centuries. It may be questioned whether either statute in its present form comports in today's conditions with the human needs that gave rise to them. The stakes in a single-plaintiff employment discrimination case are small relative to the cost of federal litigation, and the need therefore is for a quick and cheap administrative or arbitral remedy rather than the leisurely, complex, and expensive procedures of full-blown federal court litigation. How many plaintiffs can successfully negotiate the treacherous and shifting shoals of present-day federal employment discrimination law? Perhaps strengthened enforcement by the Equal Employment Opportunity Commission is the answer. Perhaps it is time for Congress to replace the present crazy quilt of federal discrimination remedies with a single, simple, swift administrative remedy. There is little the judiciary can do to speed reform, pending which we must decide these cases as best we can. To summarize our decision in this case, the judgment of the district court is affirmed insofar as it dismisses Malhotra's

charges of (1) discrimination in failing to appoint him to the positions of Accounts Receivable Manager and Finance Manager, (2) racial harassment, and (3) retaliation, but is reversed with regard to the legality under section 1981 of the denial of the other promotions that Malhotra sought. The case is remanded for further proceedings on that issue consistent with this opinion. No costs shall be awarded in this court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

CUDAHY, Circuit Judge, concurring:

I agree with the result reached by the majority as well as generally with its analysis. On at least one point, however, I believe the majority opinion is unnecessarily tentative.

On the question whether section 1981 may be applied to retaliation claims, there seems to me little parallel between harassment and retaliation. Hence, the refusal of *Patterson* to countenance harassment claims under section 1981 has only the most superficial application to claims for retaliation.[1] A prohibition against retaliation is a necessary adjunct to the anti-discriminatory provision itself. If an employee may be fired for complaining of discrimination, his right not to be discriminated against is surely vitiated.

Several courts of appeals have recognized (of course, pre-*Patterson*) a cause of action for employees discharged in retaliation for seeking redress for violations of their rights under section 1981. Judge Jerre Williams of the Fifth Circuit explained that, without a remedy for retaliatory conduct, the rights guaranteed by section 1981 would be nullified.

> The ability to seek enforcement and protection of one's right to be free of discrimination is an integral part of the right itself. A person who believes he has been discriminated against because of his race should not be deterred from attempting to vindicate his rights because he fears his employer will punish him for doing so. Were we to protect retaliatory conduct, we would in effect be discouraging the filing of meritorious civil rights suits and sanctioning further discrimination against those persons willing to risk their employer's vengeance by filing suits. Section 1981 would become meaningless if an employer could fire an employee for attempting to enforce his rights under that statute.

*Goff v. Continental Oil Co.*, 678 F.2d 593, 598 (5th Cir.1982).[2]

---

1. In fact, to the limited extent *Patterson* is relevant here, it would appear to *support* the recognition of a cause of action for retaliatory conduct. The *Patterson* court explained that section 1981's guarantee of the right "to enforce contracts"

 > covers wholly private efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations.... The right to enforce contracts ... extend[s] [to] conduct by an employer which impairs an employee's ability to enforce through the legal process his or her established contract rights.

 *Patterson v. McLean Credit Union,* — U.S. —, 109 S.Ct. 2363, 2373, 105 L.Ed.2d 132 (1989). Clearly, when an employer punishes an employee for attempting to enforce her rights under section 1981, this conduct "impairs the employee's ability to enforce her contract rights."

 The decision in *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 669, 107 S.Ct. 2617, 2625, 96 L.Ed.2d 572 (1987), although pre-*Patterson,* also supports Malhotra's retaliation claim. *Goodman* held that a union could be liable under section 1981 where it refused to process grievances that charged the employer with breaches of the collective bargaining agreement which were also violations of section 1981. Thus in *Goodman* the union had not itself denied the employees their contractual rights under section 1981; instead, the union sought to obstruct the employees' efforts to obtain redress for the employer's violations of section 1981. Of course, employer retaliation operates in the identical manner, by seeking to make it more difficult for the aggrieved employee to remedy the employer's past misconduct.

2. The Second Circuit provided a similar rationale for recognizing a cause of action for retaliation:

 > [A]n employee who is punished for seeking administrative or judicial relief, regardless of the merits of his initial claim, has failed to secure that right to equal treatment which constitutes the fundamental promise of § 1981. When a complainant experiences retaliation for the assertion of a claim to evenhanded treatment, he remains under a handicap not faced by his colleagues. Such inequality, we believe, is proscribed by § 1981.

The recognition of a right of action for retaliation under section 1981 is simply another application of a straightforward syllogism: if an employee is granted certain substantive rights against his or her employer, the employer may not punish the employee's assertion of those rights, since this would allow the employer to take away a right to protection conferred by statute. Reliance on this line of reasoning to recognize implied rights of action for retaliation is certainly not a phenomenon limited to federal decisionmaking. For some time state courts as well have recognized that, where a statute or constitutional provision creates an affirmative, substantive right, punishment of an employee for the exercise of that right is itself actionable. For example, where a statute creates an administrative mechanism through which an employee can seek compensation for work-related injuries, state courts have routinely held that an employer may not take away this right to compensation by penalizing its exercise. As the Illinois Supreme Court explained in the leading case of *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 181–82, 23 Ill.Dec. 559, 563, 384 N.E.2d 353, 357 (1978):

> [T]he legislature enacted the worker's compensation law as a comprehensive scheme to provide for efficient and expeditious remedies for injured employees. This scheme would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the Act. We cannot ignore the fact that when faced with such a dilemma many employees ... would choose to retain their jobs, and thus, in effect, would be left without a remedy.... This result, which effectively relieves the employer of the responsibility expressly placed upon him by the legislature, is untenable and contrary to the public policy [ ] expressed in the Worker's Compensation Act. We cannot believe that the legislature, even in the absence of an explicit proscription against retaliatory discharge, intended such a result.

*See also Hinthorn v. Roland's of Bloomington*, 119 Ill.2d 526, 533–34, 116 Ill.Dec. 694, 698, 519 N.E.2d 909, 913 (1988). Other states have generally reached the same result, even though, as in *Kelsay*, the worker's compensation law did not expressly create a cause of action for retaliatory discharge.[3]

*Choudhury v. Polytechnic Inst. of N.Y.*, 735 F.2d 38, 43 (2d Cir.1984); *see also, e.g., Miller v. Fairchild Indus., Inc.*, 876 F.2d 718, 723 & n. 3 (9th Cir.1989); *Greenwood v. Ross*, 778 F.2d 448, 455 (8th Cir.1985); *Irby v. Sullivan*, 737 F.2d 1418, 1429–30 (5th Cir.1984); *Setser v. Novack Investment Co.*, 638 F.2d 1137, 1147 (8th Cir.) (collecting cases), *modified on other grounds*, 657 F.2d 962 (en banc), *cert. denied*, 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981).

**3.** *Griess v. Consolidated Freightways Corp.*, 776 P.2d 752 (Wyo.S.Ct.1989); *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560–61 (Iowa 1988); *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645 (1988); *Allen v. Bethlehem Steel Corp.*, 76 Md.App. 642, 547 A.2d 1105, 1110 (1988); *Krein v. Marian Manor Nursing Home*, 415 N.W.2d 793, 794–95 (N.D.1987) ("The 'sure and certain relief' for an injured workman under our Workmen's Compensation Act would be largely illusory and do little for the worker's well-being if the price were the loss of his immediate livelihood."); *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 734 (Ky.1984); *Hansen v. Harrah's*, 100 Nev. 60, 64, 675 P.2d 394, 397 (1984) (per curiam) ("We know of no more effective way to nullify the basic purposes of Nevada's workmen's compensation system than to force employees to choose between a continuation of employment or the submission of an industrial claim."); *Lally v. Copygraphics*, 85 N.J. 668, 428 A.2d 1317 (1981) (per curiam), *aff'g*, 173 N.J.Super. 162, 413 A.2d 960 (App.Div. 1980); *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980); *Brown v. Transcon Lines*, 284 Or. 597, 588 P.2d 1087, 1090 (1978); *Sventko v. Kroger Co.*, 69 Mich.App. 644, 647, 245 N.W.2d 151, 153 (1976); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 251–52, 297 N.E.2d 425, 427–28 (1973). This is not to say that several states have not refused to recognize a cause of action for retaliatory discharge. *See Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874 (Miss.1981); *Hudson v. Zenith Engraving Co.*, 273 S.C. 766, 259 S.E.2d 812 (1979); *Martin v. Tapley*, 360 So.2d 708 (Ala.1978); *Segal v. Arrow Indus. Corp.*, 364 So.2d 89 (Fla.App.1978); *Dockery v. Lampart Table Co.*, 36 N.C.App. 293, 244 S.E.2d 272, *cert. denied*, 295 N.C. 465, 246 S.E.2d 215 (1978); *Stephens v. Justiss–Mears Oil Co.*, 300 So.2d 510 (La.App.1974); *Narens v. Campbell Sixty–Six Express, Inc.*, 347 S.W.2d 204 (Mo.1961). I would note that several (if not all) of these latter decisions have been overruled by legislation creating a cause of action for employees discharged in retaliation for exercis-

Other examples of the recognition of implied causes of action for retaliatory discharge could be recited, if further repetition were necessary to establish the basic proposition—an employer may not punish an employee for exercising statutorily conferred rights, since such retaliation nullifies the right granted by statute. Why section 1981 should be an exception to this general rule is not readily apparent.

The majority suggests that recognition of a cause of action for retaliation might not be appropriate because a white person would not have a viable section 1981 claim for retaliatory discharge based on her espousal of the contract rights of minorities. Thus, the majority reasons, retaliatory conduct is separable from the underlying right to be free from racial discrimination that a retaliating employer seeks to burden, and the act of retaliation does not necessarily imply any racial animus against the person discharged.

Initially, I would note that resolution of the majority's interesting hypothetical concerning the discharge of a white employee is unnecessary in this case. The question presented here involves a member of a minority group who was allegedly fired in retaliation for presenting *his own claims* of racial discrimination in employment. Moreover, contrary to the majority, most courts that have addressed the retaliation issue have concluded that the motive for retaliatory conduct is *necessarily* the intent to discriminate, and thereby discourage minorities' assertion of their statutory

rights.[4] Therefore, a white person who is discharged for espousing the rights of minorities could establish that the employer acted with discriminatory intent (as required to state a claim under section 1981); that the racial discrimination was directed at another, rather than directly at the plaintiff, is irrelevant, since it is the plaintiff who is suffering due to the employer's racial discrimination. The Supreme Court has held that a white individual may state a claim under 42 U.S.C. section 1982, (which, like section 1981, guarantees individuals the same rights "as [are] enjoyed by white citizens"), where the white person alleges that she was treated unfavorably due to her association with minority group members. *Sullivan v. Little Hunting Park*, 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969). Courts have relied on this decision to hold that a white person may state a claim under section 1981 where that individual alleges she was treated unfavorably due to her advocacy of the rights of, or association with, minorities.[5]

*Eichman v. State University Board of Trustees*, 597 F.2d 1104 (7th Cir.1979), and *International Woodworkers of America v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259 (4th Cir.1981), relied upon by the majority, do not suggest the contrary. In *Eichman*, the court specifically *rejected* the argument that plaintiff's Title VII retaliation claim was fatally flawed because "the plaintiff had not alleged that he was a member of a racial minority"; the court held, to the contrary, that the retaliatory discharge provision of Title VII "extends to

ing their rights under the worker's compensation law.

**4.** As the Eighth Circuit has explained,
 We do not accept appellees' contention that a retaliatory action against a prospective employee for attempting to enforce rights under § 1981 might not be based on *any* racial discrimination.... [A] retaliatory response by an employer against [an individual] who genuinely believed in the merits of his or her complaint would inherently be in the nature of a racial situation. Judicial recognition of appellees' distinction could lead courts into the factual mire of determining whether a retaliatory act was based purely on non-racial criteria.
*Setser v. Novack Investment Co.*, 638 F.2d 1137, 1146 (8th Cir.), *modified on other grounds*, 657

F.2d 962 (en banc), *cert. denied*, 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981); *see also Goff v. Continental Oil Co.*, 678 F.2d 593, 598–99 (5th Cir.1982).

**5.** *See, e.g., Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1447 (10th Cir.1988); *Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 114 (5th Cir.1986); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir.1986); *Fiedler v. Marumusco Christian School*, 631 F.2d 1144, 1150 (4th Cir.1980); *Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266, 1268–70 (6th Cir.1977); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 312 (2d Cir.), *modified on other grounds*, 520 F.2d 409 (1975); *Garcia v. Rush-Presbyterian-St. Luke's Medical Center*, 80 F.R.D. 254, 265–66 (N.D.Ill.1978).

all who 'assist' or 'participate' [in the effort to eradicate discriminatory employment practices] *regardless of their race or sex."* 597 F.2d at 1107 (emphasis added). And in *Chesapeake Bay,* the court dismissed a white employee's Title VII claim only on the narrow ground that plaintiff failed to "allege that he has been retaliated against for his efforts in pursuing the civil rights claims of others." 659 F.2d at 1270. While I might not quibble with the majority's tautological assertion that "[a] white person who opposes discrimination is not being discriminated against because of *his* race," neither this statement nor *Eichman* nor *Chesapeake Bay* answers the more relevant question: whether a white person can state a claim where he or she is discharged because of discrimination against *someone* because of that third party's race. I believe the other cases I have cited *do* resolve this issue, and resolve it in favor of finding that a white person can state a claim for his or her discharge, if that discharge was based on racial animus against persons protected by section 1981.

Of course, as has been noted, the rights of white employees under section 1981 are really irrelevant in this case, which presents the more fundamental issue whether a minority employee fired for asserting his own rights under section 1981 can state a claim based on his discharge. On this point, I would align myself with the results reached by the other circuits to have addressed this issue (and with the reasoning of state courts answering analogous questions) and hold that an individual in Malhotra's position may state a claim for retaliation under section 1981. I think therefore that the retaliation point need not be left undecided.[6]

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court. I am also pleased to join much of the thoughtful opinion of the court. However, I respectfully must decline to join that part of the opinion that suggests that *Patterson v. McClean Credit Union,* — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), can be read as permitting a section 1981 action whenever the position to which the employee desires promotion could be filled by a stranger to the firm. *Patterson* quite simply says that "the question whether a promotion claim is actionable under § 1981 depends on whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." 109 S.Ct. at 2377. Whether the position can be filled by a stranger to the firm indeed may be a factor to consider in answering this question. However, it is not a litmus test that may be applied to trigger, by its own force, the applicability of section 1981.

As the majority suggests, there may be a lack of symmetry in a regulatory scheme that provides different remedies to those who are already employees of the defendant and those who have no preexisting contractual relationship with the defendant. I do not see how that condition, an accident of history or of political will, permits us to revise the scheme. If making

---

**6.** In addition to the retaliation question, it is also possible to take a less equivocal view on the promotion issue. The majority quite persuasively points out the anomaly created by allowing a stranger to the firm to sue under section 1981 for a failure to hire while denying the same right to an existing employee seeking the same job by promotion. Nothing in *Patterson*—certainly not the "new and distinct relation" criterion—comes close to justifying or requiring our acceptance of such an anomaly. Hence, promotion to a job for which there is actual or potential outside competition is not excluded from 1981 coverage by *Patterson.*

Further, while I agree with the majority's identification of promotion claims that are actionable under section 1981, its formulation is not necessarily exhaustive. In *Patterson* the Court stated that promotions were actionable if

they constituted "an opportunity for a new and distinct relation between the employee and the employer," or "the opportunity to enter into a new contract." 109 S.Ct. at 2377. Unfortunately, although the *Patterson* decision is replete with contract terminology of established meaning ("pre-" and "post-formation conduct," "breach," "performance," etc.), the term "new and distinct relation" nowhere appears in the generally accepted contracts jurisprudence. There is no obvious reason why the Court did not intend by "new and distinct relation" to simply refer to "a new job" as laypersons might understand the term. The "new and distinct relation" test may simply involve a substantial change in the plaintiff's job duties and responsibilities. At least no cogent rationale has been cited for the test's meaning anything more.

statutes logical or symmetrical was the judicial task, we would be a law revision commission, not a court.

In my view, the majority's gratuitous suggestion undermines *Patterson,* and, I fear, will create a great deal of needless confusion in the bench and bar. As a lower federal court, we always should strive to avoid introducing such ambiguity into the holdings of the Supreme Court. Here, we ought to be particularly circumspect because the Supreme Court has warned us rather pointedly that we are to apply *Patterson,* not undermine it. When dealing with this very issue, the Supreme Court specifically warned us to give "a fair and natural reading to the statutory phrase 'the same right ... to make ... contracts' " and admonished us that we "should not strain in an undue manner the language of § 1981." *Id.*

With respect to the matter of retaliation, Judge Cudahy's analysis, consonant with the approach of other circuits, certainly presents a strong case. *Patterson* recognizes that section 1981 forbids conduct that "impairs the employee's ability to enforce ... contract rights." *Id.* at 2373. As Judge Posner notes, however, the record does not permit us to reach the issue in this case.

With the exceptions noted, I am pleased to join the judgment and opinion of the court.