933 F.2d 219
 55 Fair Empl.Prac.Cas. 1351,
56 Empl. Prac. Dec. P 40,756, 67 Ed. Law Rep. 1036
 Yvonne M. ROUNTREE, Odessa Sickels, Lillie Brown,
Plaintiffs-Appellants,
and
Lillie M. Vinson, Eunice E. Williams, Evelyn Russell,
Gwendolyn Minor, Plaintiffs,
v.
FAIRFAX COUNTY SCHOOL BOARD, Defendant-Appellee.
 No. 90-1464.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 5, 1991.
Decided May 13, 1991.
 
 Carolyn Currie Egalin, argued (Edwin C. Brown, Jr., on brief, Brown, Brown and Watkins, Alexandria, Va.), for plaintiffs-appellants.
 Thomas John Cawley, argued (Christine H. Perdue, Charles F. Martel, Hunton & Williams, on brief, Fairfax, Va.), for defendant-appellee.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BRITT, District Judge for the Eastern District of North Carolina, sitting by designation.
 MURNAGHAN, Circuit Judge:
 
 
 1
 Appellant Yvonne M. Rountree and six other appellants (hereafter Rountree),[1] all black teachers in the Fairfax County, Virginia School System, sought to apply for advancement from Career Level I to Career Level II. Successful advancement would have rendered them eligible for merit pay. Under the procedures set forth in the County's merit pay system, a system adopted in 1986, each teacher was evaluated on six separate occasions. A number of white teachers were evaluated during the same period as Rountree et al.
 
 
 2
 Each of the appellants received an overall evaluation of "effective," a rating which precluded them from applying for advancement for at least one year. Apparently, the white teachers evaluated received ratings of "skillful" or "exemplary" and were thus eligible to apply for Career Level II immediately.
 
 
 3
 Subsequently, Rountree brought suit in the United States District Court for the Eastern District of Virginia, claiming abridgement of rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment and citing 42 U.S.C. Secs. 1981 and 1983 as the bases for federal jurisdiction.[2] After some discovery had taken place, the County filed a motion to dismiss or for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56(b). The district court granted both the motion to dismiss and the motion for summary judgment, and Rountree has appealed.
 
 
 4
 Since 1986, the performance of teachers within the Fairfax County Public Schools has been evaluated under a detailed set of guidelines set forth in a Personnel Services Regulation. Teachers may progress through a three-step career ladder comprising an Entry Level, Career Level I, and Career Level II. At each step, a five-rating performance evaluation system is used based on the Fairfax County Public Schools "Standards of Teaching Performance." The five ratings are "exemplary," "skillful," "effective," "marginal," and "ineffective." The ratings at each step are based on classroom observations and other relevant criteria. The evaluation cycle, the frequency of observations, and the number and designation of observers are specified at each step.
 
 
 5
 A teacher who has reached Career Level I, who has been employed in the School System for six or more years, and who has attained an evaluation of "exemplary" or "skillful" is eligible to apply for Career Level II. Career Level I teachers who meet the six-year eligibility requirement and have been rated "effective" on the most recent evaluation become eligible to apply for Career Level II after one additional year.
 
 
 6
 Teachers seeking Career Level II are evaluated by their principal on the basis of at least six classroom observations by a team of observers. The team includes the principal, a curriculum observer with expertise in the teacher's area of specialty, and a generalist observer. A teacher who achieves a rating of "exemplary" or "skillful" on the basis of those observations moves to Career Level II and is reevaluated on a four-year cycle.[3]
 
 
 7
 Designation of Career Level II status apparently does not change a teacher's duties and responsibilities. The teacher's job title and basic continuing contract with the School Board do not change. Career Level II status is not a prerequisite to promotion to management positions with the school system or to designation of teachers as chairpersons of departments. Career Level II status does, however, determine eligibility for certain merit pay increments if such increments are approved by the School Board from year to year. For example, in the 1988-89 school year, Career Level II teachers did not receive an increase in salary but were awarded a nine percent bonus by the School Board.
 
 
 8
 Each of the appellants sought Career Level II status during the 1988-89 school year and was rated "effective" following the observation process. Appellants claim that white teachers whose performance fell below theirs received an evaluation of "skillful" or higher "because of their race and/or personal relationship with the principal."
 
 
 9
 Appellants had available to them two means to contest their ratings. First, the internal grievance procedure, adopted in accordance with Virginia law, provides for review by the principal, appeal to the Area Superintendent or designee, appeal to an advisory factfinding panel, and ultimate appeal to the School Board. Alternatively, a teacher may choose to have a contested rating reviewed by a group of peers through the Career Advancement Review Board. The Review Board was created solely to review appeals of performance evaluations of teachers who fail to attain Career Level II. A majority of Review Board members are teachers elected by their peers. The Review Board makes a recommendation to the Division Superintendent on each appeal. The Superintendent may in turn choose to accept, reject, or modify the Review Board's recommendation.
 
 
 10
 Yvonne M. Rountree appealed her rating through the statutory grievance procedure. Her case had proceeded to the factfinding stage when suit was brought in the district court. Sickels had appealed to the Career Advancement Review Board, which denied her appeal following a hearing. Brown did not grieve or appeal her rating through either means.
 
 
 11
 Appellants filed their initial section 1983 complaint on October 11, 1989. The complaint was never served on the School Board, and appellants made no attempt to proceed with discovery. Under "Nature of the Action," the case was described as an attempt to enjoin the School Board's "teacher performance evaluation policies, regulations and statutes," on the grounds that the use of the procedures operated to discriminate against blacks and other minorities on the basis of race. Each appellant alleged that she had received an evaluation "less than warranted" by her principal and that white teachers received higher ratings "because of their race and/or personal relationship with the principal."
 
 
 12
 Appellants filed an amended complaint three months later, on January 11, 1990. The amended complaint raised identical allegations concerning the teacher performance evaluation system and added a claim for breach of the appellants' employment contracts.
 
 
 13
 In response to the amended complaint, the School Board filed a motion to dismiss or for summary judgment under Federal Rules of Civil Procedure 12(b)(6) and 56(b). As grounds for the motion, the School Board submitted that the appellants' breach of contract claims were time-barred and not actionable under either 42 U.S.C. Sec. 1981 or Sec. 1983; that appellants had failed to state a claim for violation of the Due Process Clause; and that their claims of race discrimination in the performance evaluation system for teachers should be dismissed because they failed to allege purposeful discrimination arising from an official policy of the School Board.
 
 
 14
 Appellants did not address any of the School Board's grounds for dismissal either in their written response or at oral argument. Appellants' sole focus in their written response and at oral argument was that the adoption of the performance evaluation system, and the opportunity to become eligible for merit pay, constituted a new and distinct contractual relationship with the School Board which was actionable under 42 U.S.C. Sec. 1981. Appellants submitted no affidavits or other evidentiary materials in opposition to the motion to dismiss or for summary judgment but relied instead upon their pleadings.
 
 
 15
 The district court granted the School Board's motion and dismissed the amended complaint in its entirety on April 6, 1990. The district judge noted that the only claim which the plaintiffs asserted was viable was the section 1981 claim. He held that the adoption of the teacher evaluation system did not rise to the level of a new and distinct contractual relationship under Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Alternatively, he held that appellants had failed to come forward with any evidence of discrimination sufficient to create a genuine issue of material fact, as required by Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 16
 Only the dismissal of appellants' section 1981 claim is bruited on appeal.
 
 
 17
 The key issue facing the district court on the School Board's motion for dismissal or summary judgment was whether Rountree's racial discrimination in promotion claim stated a cause of action under 42 U.S.C. Sec. 1981.[4] The issue was generally given shape by the Supreme Court's decision in Patterson, which held that, generally, race discrimination claims arising under section 1981 do so in the actual formation of the contract only and not out of postformation conduct. 491 U.S. at 179-80, 109 S.Ct. at 2374. As to racial discrimination in promotion specifically, the Court went on to hold that "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under Sec. 1981." Id. 491 U.S. at 185, 109 S.Ct. at 2377.
 
 
 18
 Relying upon the "new and distinct relation" language of Patterson, the district court granted the School Board's motions to dismiss and for summary judgment, ruling that "the change in the relationship between the plaintiffs on the one hand and the defendant on the other, effected by the adoption of the Merit Pay System, does not rise to the level of a new and distinct contractual relationship between the plaintiffs and the defendant so as to state a claim under 42 U.S.C. Sec. 1981."
 
 
 19
 Rountree, in asserting that her complaint should have survived dismissal and summary judgment, contended that a genuine issue of material fact existed as to whether a new and distinct contractual relationship was effected between her and the School Board when the School Board adopted a merit pay system in 1986.
 
 
 20
 Rountree's first assertion actually raised mixed questions of law and fact; that is, 1) did certain of Rountree's factual assertions regarding the merit pay system find an evidentiary basis in the record and 2) was the district court's finding that the facts did not rise to the level of a "new and distinct contractual relationship" correct as a matter of law?[5]
 
 
 21
 Five justifications have been raised as to why the School Board's adoption of the merit pay system brought about a "new and distinct" contractual relationship between employees and employer: 1) Career Level II teachers are entitled to merit pay when such increases are approved by the School Board; 2) Career Level II teachers are given new responsibilities in advising the school superintendent and principal and in providing guidance, help, and support in running the school; 3) Career Level II teachers themselves are better positioned for future promotion and opportunities; 4) Career Level II teachers are further advantaged by the benefit of evaluation on a 4-year rather than the 3-year basis under which Entry Level and Career Level I teachers are evaluated; and 5) to the extent that the merit pay plan provides a set of procedures for appealing the denial of Career Level II status, which forecloses the right to the statutory grievance procedure, the plan impairs Rountree's ability to enforce contract rights.
 
 
 22
 Turning first to the factual elements of Rountree's fivepart assertion, the School Board has conceded and it is undisputed that Career Level II teachers are eligible for merit pay, that they are subject to a four-year evaluation cycle, and that "teachers who apply for Career Level II status but who receive an "effective" rating ... ha[ve] the option to select the [statutory grievance] procedure or Career Advancement Review Board, but may not utilize both procedures." That has eliminated any genuine issue of material fact as to three of the points (Points 1, 4, and 5). As for Rountree's second and third contentions regarding increased responsibility and improved opportunity for promotion, the School Board has pointed out, correctly, that the only record reference to be found in support thereof is the arguments of counsel for Rountree at the hearing on the School Board's motion for dismissal. The arguments of counsel, absent any evidence such as sworn affidavits accompanying objections to a motion for summary judgment, fail to meet the evidentiary standard necessary to create a genuine issue of material fact. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. Thus, Rountree's assertions notwithstanding, no genuine issue of material fact existed as to the effect of the School Board's adoption of a merit pay system on the contractual relationship between the School Board and its teachers.
 
 
 23
 The only question remaining is whether the district court correctly ruled that, as a matter of law, the fact that Career Level II teachers are eligible for merit pay and are subject to a four-year evaluation cycle constituted a "new and distinct" contractual relationship between Rountree and the School Board.
 
 
 24
 While we recently had the opportunity to revisit Patterson in Williams v. First Union Nat'l Bank, 920 F.2d 232 (4th Cir.1990), finding that the plaintiff could not make out a section 1981 claim for discriminatory discharge or discriminatory working conditions, the question of discriminatory promotion in a section 1981 context is one of first impression. At least one district court within the Fourth Circuit has suggested that we look to the Seventh Circuit's decision in Malhotra v. Cotter & Co., 885 F.2d 1305 (7th Cir.1989), for guidance. White v. Federal Express Corp., 729 F.Supp. 1536 (E.D.Va.1990). In Malhotra, Judge Posner suggested that the Patterson holding was susceptible to one of two interpretations. First, the Patterson Court's reference to contract and its citation to Hishon v. King & Spaulding, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), suggest that in determining whether a new and distinct relation between employer and employee is created, "the focus of inquiry should be on whether the promotion would change the terms of the contractual relationship between the employee and employer." Malhotra, 885 F.2d at 1311. The White court labeled the standard the "contract test." 729 F.Supp. at 1545. As an alternative and broader interpretation, Judge Posner suggested that the decision would turn on whether the promotion is one for which an outsider could apply and for which a section 1981 claim would lie if the position were denied, see 885 F.2d at 1311, the second possible interpretation called the "outsider test" in White, 729 F.Supp. at 1545. In a concurring opinion, Judge Cudahy focused on whether the promotion would involve a substantial change in the plaintiff's job duties or responsibilities. 885 F.2d at 1317 n. 6 (Cudahy, J., concurring). The White court called the third standard the "job requirement test." 729 F.Supp. at 1545.
 
 
 25
 Rountree, as we have shown, offered little if anything in the way of an argument contesting the district court's ruling that, as a matter of law, the facts relating to the impact of the School Board's adoption of the merit pay system have not risen to the level of a "new and distinct" contractual relationship sufficient to satisfy the Patterson standard. In fact, argument has been only that, because the merit pay system requires a teacher who is denied promotion to Career Level II to choose between the Career Advancement Review Board and the statutory grievance process in appealing the denial, the merit pay plan impairs Rountree's ability to enforce her contract rights. See Patterson, 491 U.S. at 179-80, 109 S.Ct. at 2374 (conduct which impairs the right to enforce contract obligations through the legal process is actionable under section 1981).
 
 
 26
 That argument is, however, easily disposed of by noting that the merit pay system does not impair, but rather enhances, an aggrieved teacher's ability to appeal a promotion or pay raise decision by adding review by the Career Adjustment Review Board. The teacher may choose whichever means of appeal he or she prefers, as demonstrated by the appellants in the instant case. Rountree chose to appeal through the statutory grievance procedure; Sickels chose the Review Board; and Brown elected not to appeal through either route.
 
 
 27
 Moving to the other two factual aspects of promotion to Career Level II over which there exists no dispute--the eligibility for merit pay and evaluation on a four-year cycle rather than a three-year--Rountree devotes no discussion in her brief as to how such factors rise to the level of a "new and distinct" contractual relationship. In any event, such factors would seem to fall squarely within the District Court for the Eastern District of Virginia's holding in White v. Federal Express, 729 F.Supp. at 1546, which drew a distinction between alleged promotions and what were, in fact, pay raises for essentially the same responsibilities. There, in a case involving two plaintiffs, one plaintiff claimed denial of an opportunity to transfer from a courier to a dispatcher position; a second plaintiff contended that she had been given a low performance review and had been denied the opportunity to transfer to another shift and realize a bonus of $500. Id.
 
 
 28
 The White court adopted the "contract" test set out in Malhotra and concluded that neither set of claims satisfied the Patterson test of "new" employment, because the changes sought were more in the nature of lateral transfer, with the level of responsibilities remaining essentially the same. Id. The court concluded, "Additionally plaintiffs assert that, because of their negative impact on promotions, discriminatory performance reviews and discipline are tantamount to denial of promotion. This argument, if accepted, would effectively erase Patterson." Id. at 1546 n. 11. In short, the White analysis makes clear that any contractual changes brought about by the School Board's merit pay system fail to satisfy any of the Malhotra interpretations of Patterson.
 
 
 29
 Thus, because no genuine issue of material fact existed as to the effect of the merit pay system upon the contractual relationship between Rountree and the School Board and because, as a matter of law, such effect does not rise to the level of a "new and distinct" contractual relationship sufficient to satisfy the requirements of Patterson, the district court did not err in granting summary judgment in favor of the School Board.[6]
 
 
 30
 For all of the foregoing reasons, the judgment of the district court is
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 Four of the original appellants have voluntarily dismissed their appeals. The three remaining appellants are Yvonne Rountree, Odessa Sickels, and Lillie Brown
 
 
 [2]
 Yvonne M. Rountree later added a pendent claim of common law breach of contract in her amended complaint
 
 
 [3]
 Entry Level and Career Level I teachers are evaluated on a three-year cycle
 
 
 [4]
 Section 1981 provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 [5]
 The bulk of Rountree's argument here has gone to the assertion that genuine issues of material fact exist as to the effect of adopting the merit pay system as constituting a "new and distinct" contractual relationship between her and the School Board. In fact, her first argument in appellants' brief is captioned solely as a genuine issue of material fact argument. However, because Rountree has suggested at the end of part A of appellants' brief that the district court erred in concluding that, as a matter of law, the adoption of the merit pay system fails to satisfy the language of Patterson, we, dubitante, will address that issue as well
 
 
 [6]
 The district court also found, as an alternative basis for dismissal of the claim, that Rountree, in response to the motion for summary judgment, had not come forward as required by Celotex with evidence of discriminatory intent or disparate impact sufficient to create a genuine issue of material fact. We need not address the contention, having affirmed the district court's primary ground for dismissal