BACHARACH, J., concurring.
 

 I join virtually all of the majority's thoughtful and persuasive opinion. I respectfully disagree only with the majority's analysis in Part II(A)(3)(a)(ii), which discusses the policy that allegedly prohibits plan sponsors from offering other low-risk funds alongside Great-West's own Key Guaranteed Portfolio Fund ("KGPF").
 
 See
 
 Maj. Op. at 1218-20. Although I agree that Great-West is entitled to summary judgment on these claims, I do not believe that Mr. Teets bore the burden to present the evidence discussed in the majority opinion.
 
 [1]
 

 1. Mr. Teets had no burden to allege specific facts to counter a basis for summary judgment that Great-West had not raised.
 

 The majority reasons that Mr. Teets failed to set forth specific facts showing that participants had been forced to accept a credited interest rate or had felt locked into the KGPF. But Great-West had not moved for summary judgment on this basis.
 

 A nonmovant opposing summary judgment is "obligated only to present evidence opposing the arguments made in the respondents' summary judgment motion."
 
 Bonney v. Wilson
 
 ,
 
 817 F.3d 703
 
 , 710 (10th Cir. 2016). This obligation arises only when the nonmovant is "alerted by the [moving party] below that such evidence had to be shown in order for her to avoid summary judgment."
 
 Tavery v. United States
 
 ,
 
 32 F.3d 1423
 
 , 1427 n.5 (10th Cir. 1994) ;
 
 see
 
 id.
 

 ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B-a
 ground the movant might have presented but did not." (quoting
 
 Malhotra v. Cotter & Co.
 
 ,
 
 885 F.2d 1305
 
 , 1310 (7th Cir. 1989) )). When a nonmovant lacked such an obligation in district court, it is "unfair" to rely on the absence of supporting evidence as a basis for summary judgment.
 
 Bonney
 
 ,
 
 817 F.3d at 710
 
 . To do so would amount to an entry of summary judgment
 
 sua sponte
 
 , which is appropriate only when the non-moving party was "on notice that she had to come forward with all of her evidence."
 
 Celotex Corp. v. Catrett
 
 ,
 
 477 U.S. 317
 
 , 326,
 
 106 S.Ct. 2548
 
 ,
 
 91 L.Ed.2d 265
 
 (1986).
 

 I don't think that Mr. Teets received such notice. In its motion for summary judgment, Great-West did not argue that Mr. Teets lacked evidence that he or other participants had felt restricted or that they would have invested in alternative low-risk funds but for Great-West's non-compete policy. Great-West instead urged
 

 • the absence of a contractual provision that prohibited the offering of competitive funds (
 
 see
 
 Appellant's App'x, vol. II, at 353) and
 

 • a marketplace theory of nonliability (that plan sponsors-not Great-West-are responsible for choosing the funds to offer) (
 
 id.
 
 at 155).
 

 Thus, I would not fault Mr. Teets for failing to present evidence on how the non-compete policy had affected participants' behavior.
 

 2. Great-West does not incur a fiduciary duty based on the plan sponsor's decision to offer the KGPF even if the plan sponsor's decision would have prevented the offering of competitive funds.
 

 I would instead affirm the grant of summary judgment based on Great-West's marketplace theory of nonliability. In advancing this theory, Great-West argued that although it could decide on the terms that it would be "willing to offer an investment product, it [could not] compel the plan to accept the investment option on those terms over alternatives available in the marketplace." Appellant's App'x, vol. II, at 160. As a result, Great-West contended that it could not incur a fiduciary duty for a plan sponsor's decision to offer the KGPF rather than competing funds.
 

 I agree with Great-West. As alleged by Mr. Teets, the policy serves only to prevent plan sponsors from offering the KGPF if competing funds are also offered;
 
 [2]
 
 the alleged policy does not affect the availability of Great-West's general investment platform if the plan sponsor had chosen to offer competing funds in lieu of the KGPF. So if plan sponsors decide that the KGPF is uncompetitive because of its credited interest rate or the non-compete policy, plan sponsors can freely replace the KGPF with other comparable investment options.
 

 Mr. Teets responds that Great-West acts as a fiduciary because he cannot personally choose between the KGPF and other competing low-risk funds. But this response blames Great-West for the decision-making of Mr. Teets's plan sponsor. Plan sponsors need not offer participants (1) multiple funds in the same asset class or (2) any stable-value fund.
 
 [3]
 
 Thus, Mr. Teets's theory assumes that plan sponsors would choose to offer competing funds in the absence of the alleged policy.
 

 Even if this theory were otherwise valid, Mr. Teets has not alleged that his plan
 sponsor would make this choice. Great-West urged summary judgment by asserting that plan sponsors are solely responsible for choosing appropriate portfolios and that Mr. Teets's plan sponsor had selected the funds based on "independent recommendation and/or evaluation." Appellant's App'x, vol. II, at 155. In response, Mr. Teets contended that his plan sponsor couldn't offer competing funds alongside the KGPF, but this contention does not address whether his plan sponsor wanted to offer competitors' funds.
 

 Mr. Teets assumes that plan sponsors would act as he wishes; but plan sponsors are not parties, and Mr. Teets points to no evidence that Great-West influences plan sponsors' selection of investments. Mr. Teets has thus failed to set forth specific facts contesting Great-West's argument for summary judgment based on a marketplace theory of nonliability.
 
 Celotex Corp.
 
 ,
 
 477 U.S. at 324
 
 ,
 
 106 S.Ct. 2548
 
 .
 

 Mr. Teets instead complains that his plan sponsor offered the KGPF by itself rather than include other competitive funds. But Great-West cannot become a fiduciary based on the plan sponsor's selection of investment options. I would thus reject Mr. Teets's effort to pin fiduciary status on Great-West's conditioning of its offer to the plan sponsor.
 

 The majority also notes that Mr. Teets can point to no case "in which a court has deemed a service provider to be a fiduciary based on participants' lack of alternative investment options, or on anything other than imposing a penalty or fee for withdrawal." Maj. Op. at 1219. I too have found no such case. But I also have not found any cases rejecting participant choice as a theory of liability. So this appears to be a question of first impression. The absence of case law on this theory suggests only that it is novel, not that it should be rejected.
 

 Although the record does not reveal the origin of the non-compete policy, Mr. Teets has not alleged that Great-West imposes the policy without the plan sponsors' knowledge and consent.
 

 In a regulation interpreting ERISA, the Department of Labor defines plan sponsors' responsibility to offer at least three investment options with "materially different risk and return characteristics" that "enable the participant or beneficiary by choosing among them to achieve a portfolio with aggregate risk and return characteristics at any point within the range normally appropriate for the participant or beneficiary."
 
 29 C.F.R. § 2550
 
 .404c-1(b)(3)(i)(B).