George L. WASHINGTON, Plaintiff,

v.

**THRALL CAR MANUFACTURING COMPANY, an Illinois corporation, Defendant.**

No. 94 C 2486.

United States District Court, N.D. Illinois, Eastern Division.

July 7, 1995.

William J. Borah, Homewood, IL, for plaintiff.

James Stephen Poor, Joseph S. Turner, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant.

1. Thrall, an Illinois corporation with its principal place of business in Chicago, manufactures rail cars.

2. Between January and September, 1991, however, only two rail cars were scheduled to be built at Plant One: one in June and one in August. Beginning in September, 1991, however, a production run of seventy-five cars was scheduled.

3. Ruhbeck had been the Union committeeman at Plant One before it was shut down in January, 1991.

4. Washington asserts that Blievernicht's recitation of what Searight said to him is hearsay.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff George L. Washington brings this action against defendant Thrall Car Manufacturing Company, alleging violations of 42 U.S.C. § 2000e and 42 U.S.C. § 1981. Presently before the court is defendant's motion for summary judgment. For the reasons set forth below, defendant's motion is granted.

### I. Background

Plaintiff George Washington, an African-American male, was hired by defendant Thrall Car Manufacturing Company in 1967.[1] For the past twenty years, he has worked in Thrall's maintenance department, and is currently employed in the highest rated classification in that department. Between 1988 and January, 1991, Washington worked as a Maintenance A employee at Thrall's "Plant One;" when the plant was shut down in January, he was transferred to "Plant Two." In April, 1991, however, a number of employees began working on a prototype rail car at Plant One.[2] On April 25, 1991, Washington filed a plant preference card, stating that he wished to be returned to Plant One if a Maintenance A position opened at that plant. Around the same time, the president of the local union, Gary Searight, approached Norman Blievernicht, Thrall's Director of Manufacturing Administration, requesting that Gary Ruhbeck, a white Maintenance A employee, be transferred to Plant One to provide union representation to the employees working there.[3] Blievernicht discussed the request with Craig Dowden, Thrall's Vice President of Administration, and Dowden agreed to transfer Ruhbeck to Plant One. Accordingly, Ruhbeck began working at Plant One on May 6, 1991.[4]

However, it is apparent that Searight's statement is being offered not for its truth, but for Blievernicht's state of mind in transferring Ruhbeck, and therefore does not constitute hearsay. *See* Fed.R.Evid. 801(c). Washington also suggests that the union representative had traditionally been elected by the employees, rather than designated by the union president. That, however, is an argument more properly raised with the union, and does not constitute a basis for questioning the *company's* reason for transferring Ruhbeck (*i.e.*, pursuant to a request from the union president).

Washington immediately challenged this action, and the Union filed a grievance on Washington's behalf, protesting Ruhbeck's transfer. Following this action, after Ruhbeck had worked at Plant One for one week, Thrall transferred Ruhbeck back to Plant Two, but denied Washington's grievance citing Searight's request. The Union Arbitrator ultimately acknowledged that Ruhbeck was transferred to Plant One "at the request of and with the agreement of the Union." And although Ruhbeck had been returned to Plant Two, Washington was not transferred to Plant One.

Accordingly, on June 12, 1991, Washington filed a charge of race discrimination with the Illinois Department of Human Rights ("IDHR"), asserting that he had discriminatorily been denied a transfer to Plant One. On August 26, 1991, while the charge was pending, Thrall granted Washington's transfer request, and transferred him back to Plant One. In September, 1991, a seventy-five rail car production run began, and Washington stayed at Plant One until February, 1992, when Plant One was once again closed down. In January, 1994, Washington received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). He filed the instant action, alleging race discrimination in connection with the failure to transfer. He subsequently amended his complaint, alleging addition occurrences of discrimination, including (1) denial of overtime during the time he was assigned to Plant One; (2) assigning him alone to jobs typically assigned to two or more white individuals following his transfer back to Plant Two; and (3) assigning him to duties in extremely cold weather more frequently than white employees were assigned to those duties during the winter of 1994. However, none of these additional instances of discrimination were included in Washington's original charge with the IDHR and EEOC, nor did he file an amended or subsequent charge alleging additional acts of discrimination.

## II. Summary Judgment Standard

■ Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and . . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

## III. Discussion

■ In *Mojica v. Gannett Co.*, 7 F.3d 552 (7th Cir.1993) (en banc), the Seventh Circuit reiterated the applicable standards in an employment discrimination case:

In any discrimination case, the plaintiff bears the ultimate burden to prove, by a preponderance of the evidence, that his employment was adversely affected by his protected class status. The plaintiff can meet this burden by presenting direct evidence of discrimination, or by successfully navigating the course of shifting burdens authorized in *McDonnell Douglas Corp. v. Green.*

*Id.* at 561 (citations omitted). In the present case, Washington has not offered direct evidence of discrimination, and we therefore turn to the familiar burden shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, the plaintiff must first set forth a prima facie case of discrimination, by showing that

(1) he belongs to some protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) his employer treated similarly-situated employees outside his classification more favorably.

*Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir.1994) (citing *McDonnell Douglas* ). The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.[5] If the defendant is successful, the burden shifts back to the plaintiff to rebut the defendant's proffered explanation by proving that the "legitimate" reason was merely a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825. At this stage, the plaintiff must persuade the trier of fact that the defendant's explanation is "unworthy of credence" or that "a discriminatory reason more likely motivated" the defendant. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

 With respect to Washington's "failure to transfer" claim, Thrall asserts that Washington can not make out a prima facie case of discrimination. Specifically, Thrall maintains that Washington has failed to demonstrate that he suffered an *adverse* employment action. It is undisputed that Maintenance A employees assigned to Plant One received the same rates of pay and benefits as employees assigned to Plant Two. Washington nonetheless maintains that Thrall's refusal to transfer him to Plant One between April and August of 1991 was adverse, and cites two reasons in support. First, he maintains that Plant One was a less stressful place to work, and adds that he was subject to "a daily bigotry occurrence" at Plant Two. We initially observe that "the presence or absence of discrimination in such a situation hinges not on the subjective feelings of an employee but rather on the objective nature of the change in assignment. . . ." *President v. Illinois Bell Tel. Co.,* 865 F.Supp. 1279, 1286 (N.D.Ill.1994). Accordingly, Washington must identify some factor other than his own personal preference or his subjective feelings regarding each plant in order to demonstrate an adverse action. In any event, Washington's statement is insufficient to allow him to survive the present motion.

Washington offers nothing other than his vague, unsupported assertion regarding his treatment at Plant Two; he does not identify any individuals who treated him in a bigoted manner, or specify the conduct constituting the "bigotry occurrence."[6] On summary judgment, Washington can not simply rest on his unsupported, non-specific allegations of bigotry. Instead, he must provide support for his claim, and that he has not done. *See Stewart v. McGinnis,* 5 F.3d 1031, 1034–35 (7th Cir.1993) (discussing purpose of and standard on summary judgment). Accordingly, his claims of bigotry at Plant Two are entitled to no weight.

Washington also claims that the refusal to immediately transfer him was adverse because he would have received more overtime pay at Plant One than he did at Plant Two. Once again, however, Washington falters in offering support of this assertion. He first argues that when he was ultimately transferred to Plant One in late August, 1991, he earned a significant amount of overtime pay. As discussed above, however, it is undisputed that a full production run of seventy-five rail cars began in September, 1991. During the summer months, on the other hand, only two cars were scheduled to be built: one in June and one in August. Given the difference in production schedules at Plant One between May to August, 1991, and thereafter, we conclude that the amount of overtime Washington was able to earn after he was transferred, when Plant One was building seventy-five rail cars, is not probative of the overtime potential during the late spring and early summer months, and it is the latter figure which is relevant for summary judgment purposes.

 Perhaps cognizant of this fact, Washington points to work that was performed at Plant One between May and August. He argues that two other maintenance employees, Glen Goetz and Doug Nykaza, who were assigned to Plant Two, were sent over to Plant One to perform work throughout the summer. He also asserts that other Plant Two workers were occasionally and

---

5. The defendant's burden in this regard is merely one of production; the burden of persuasion remains with the plaintiff. *See Coates v. Johnson & Johnson,* 756 F.2d 524, 531 (7th Cir.1985).

6. In addition, we note that Washington never filed a grievance or charge of discrimination regarding the alleged bigotry at Plant Two.

temporarily assigned to Plant One during the time Goetz and Nykaza were there. However, it is undisputed that Nykaza was an expert on "Dart" equipment, which apparently involves semiautomatic welding machines, and that ninety-five percent of his time was dedicated to working on such equipment. He was sent to work at Plant One, notwithstanding his assignment to Plant Two, because the Dart equipment was stored at Plant One. In addition, plaintiff concedes that Goetz was sent to Plant One to assist Nykaza in his work on the Dart machines. Washington does not claim that he is skilled in working on the Dart equipment, or that he should have been sent to perform the specialized work of Nykaza and Goetz. Instead, the crux of his argument is that Goetz and Nykaza, along with the other maintenance employees sent to Plant One, performed *other* maintenance work, thus indicating a need for a full-time maintenance person at Plant One. While this may be true (an issue we need not decide), it does not support Washington's claim that the failure to transfer him to Plant One was adverse. The fact that there was maintenance work to be done at Plant One does not support the conclusion that there was *overtime* pay to be had, and it is only proof that Washington could have worked more *overtime* hours that will support his assertion that the failure to transfer was adverse. He has made no showing in this regard. On the contrary, the evidence supports the opposite conclusion. For example, when Ruhbeck was transferred to Plant One, he worked only forty-one hours in the week that he was there. In light of these facts, and given the dearth of evidence supporting Washington's claims, we conclude that Washington has failed to demonstrate that he suffered an adverse employment action, and thus cannot make out a prima facie case on his failure to transfer claim. Thrall is therefore entitled to summary judgment on that claim.

 We now turn to the remaining alleged incidents of discrimination. As stated above, Washington failed to include these claims in his administrative charge. As a result, they are only cognizable if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mutual Hos-*

*pital Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.) (en banc) (internal quotations and citations omitted), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). The Seventh Circuit has reiterated the purpose and importance of this limitation:

> Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.

*Babrocky v. Jewel Food Co.,* 773 F.2d 857, 864 (7th Cir.1985).

 Washington asserts that the additional claims are properly before us, because Thrall's acts constitute a "continuing violation" of the anti-discrimination laws. This, of course, is the wrong inquiry, since the continuing violation doctrine is not concerned with claims not raised in an EEOC charge, but instead "allows a plaintiff to get relief for a *time-barred act* by linking it with an act that is within the limitations period." *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992) (emphasis added). In any event, Washington's claims must fail. The claim raised by Washington in his EEOC charge was failure to transfer between April and August, 1991; in addition to that claim, his complaint includes allegations of denial of overtime work in late 1991 and early 1992, assignment to jobs typically assigned to two or more white individuals following his transfer back to Plant Two in February, 1992, and assignment to duties in extremely cold weather more frequently than white employees were assigned to those duties during the winter of 1994. The Seventh Circuit faced a similar fact pattern in *Malhotra v. Cotter & Co.,* 885 F.2d 1305 (7th Cir.1989). There, the plaintiff filed an administrative charge in 1985, asserting that his employer failed to promote him because of his ethnic origin on ten separate occasions between 1979 and 1985. In his subsequent lawsuit, Malhotra also claimed that, after he was promoted in 1986, he was harassed by his employers. The district court granted the defendant's motion for summary judgment on all of the claims, and the Seventh Circuit affirmed. In upholding the district court's conclusion that

Malhotra was barred from bringing his harassment claim because it was not encompassed by his charge, the Seventh Circuit stated:

> The charge he filed in 1985—the *only* charge he filed—pertained to an earlier time period, a different form of discrimination (failure to promote), and different employees of Cotter. The new claim was too remote.

*Id.* at 1312 (emphasis in original). The same reasoning applies here. The discrimination Washington alleged in the charge (failure to transfer) took place before the other alleged acts; indeed, the other acts occurred only after he was transferred in August, 1991. Furthermore, the refusal to transfer an employee can not fairly be characterized as the same type of discrimination as the remaining alleged acts (*i.e.*, limitation on overtime pay and nature of work assignments).[7] Because the "failure to transfer" claim in the administrative charge would have alerted neither the EEOC nor Thrall to the subsequent unrelated acts included in the present complaint, we conclude that Washington is barred from raising them here, and thus grant Thrall's motion for summary judgment on those claims as well.

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment is granted. It is so ordered.

---

**7.** Indeed, the only one of these claims which falls even remotely close to the "failure to transfer" claim is Washington's assertion that he was denied overtime opportunities after he was transferred, in light of Washington's assertion that he sought the transfer in order to increase his overtime pay. We note, however, that even if we concluded that this claim was not barred, it would fail on the merits. The basis for Washington's claim is that prior to 1991, his shift ("Shift One") was designated to start-up and close the plant. He maintains, however, that after he was transferred to Plant One in August, 1991, he was not usually directed to start-up or close the plant. Although he attempts to link this change to his transfer to Plant One, it is undisputed that, *prior to Washington's transfer,* Thrall had Tom Sullivan, a Shift Two maintenance employee from Plant Two, start-up Plant One. Indeed, Sullivan had begun starting-up Plant One even before Ruhbeck was assigned there in May, 1991, performed that function on at least three of the days of the week that Ruhbeck was there, and continued to start-up the plant through at least December, 1991. With respect to closing the plant, it is clear that Ruhbeck (who occupied the position that Washington claims he should have had) never closed the plant during the week he was assigned there. In light of these facts, there is simply no evidence linking the change in the shifts starting-up and closing the plant to Washington's transfer to Plant One. Accordingly, even if this claim were properly before us, we would grant defendant's motion for summary judgment on the merits.