Filed: January 21, 1999

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

───────────────

No. 97-2295
(CA-95-349-AW)

───────────────

Walter C. Sloane, etc.,

                                    Plaintiff - Appellant,

        versus

Donna Shalala, etc.,

                                    Defendant - Appellee.

───────────────

O R D E R

───────────────

        The court amends its opinion filed November 18, 1998, as follows:

        On page 7, first paragraph, line 5 -- "J.A. at 13" is corrected to read "J.A. at <u>37</u>."

                                    For the Court - By Direction


                                    /s/ Patricia S. Connor
                                           Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WALTER C. SLOANE, CDR, M.D.,
<u>Plaintiff-Appellant,</u>

v.

No. 97-2295

DONNA SHALALA, SECRETARY OF
HEALTH AND HUMAN SERVICES,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-95-349-AW)

Argued: September 23, 1998

Decided: November 18, 1998

Before WIDENER and LUTTIG, Circuit Judges, and MAGILL,
Senior Circuit Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert L. Bell, LAW OFFICES OF ROBERT L. BELL,
Washington, D.C., for Appellant. Allen F. Loucks, Assistant United
States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** C.
Vaughn Adams, Christopher Leon Jones, Jr., LAW OFFICES OF
ROBERT L. BELL, Washington, D.C., for Appellant. Lynne A. Bat-
taglia, United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Walter C. Sloane challenges the district court's judgment on his claims of racial discrimination under Title VII of the Civil Rights Act of 1964. Because Sloane failed to exhaust the available administrative remedies in a timely fashion before pursuing this action, we vacate and remand with instructions to dismiss.

I.

In 1974, upon graduating from the Howard University College of Medicine, appellant Walter C. Sloane became a uniformed medical officer in the commissioned corps of the Public Health Service (PHS). Upon commissioning, Sloane spent six years completing his clinical training, then served for one year as a staff ophthalmologist in a PHS hospital. Sloane was next stationed at the Food and Drug Administration (FDA), where he proceeded to serve in a variety of positions. By 1986, Sloane was reviewing applications for investigational ophthalmological devices in the Center for Devices and Radiological Health at the FDA.

In 1986, the PHS issued a regulation requiring all of its officers to be licensed by the relevant state authorities. The purpose of this regulation was to subject PHS officers to the same requirements applicable to doctors in the private sector. The regulation required all officers to comply with the requirement by December 31, 1988, and established sanctions for noncompliance, including loss of bonuses, exclusion from consideration for promotions, and involuntary retirement.

The regulation created a Licensure Waiver Board (LWB) to process requests from PHS officers for waivers from the licensing requirement. The role of the LWB was to make recommendations to the Surgeon General on these requests. The regulation set out the fol-

2

lowing four criteria to be used by the LWB in processing waiver requests:

> (1) The likelihood, nature, and amount of patient contact in the position;
>
> (2) Whether the role of the individual is essential to the mission of the agency or the program;
>
> (3) The impact of the waiver on the potential risks to individual patients, the program's constituency, and the public;
>
> (4) The specific reason(s) why the officer cannot obtain the appropriate credentials.

J.A. at 891.

In December 1988, Sloane applied for a waiver. The LWB recommended rejecting his application, and, in March 1989, the Surgeon General denied the application. From 1989 to 1995, Sloane repeatedly attempted to come into compliance with the licensing requirement by taking the state licensing examination, but failed the examination each time. In 1991, acting on the recommendation of the LWB, the Surgeon General imposed sanctions on Sloane for his failure to comply with the licensing requirement, including loss of bonuses, exclusion from consideration for temporary promotions, and referral for involuntary retirement in three years' time. In 1993 and 1994, Sloane also received poor performance evaluations from his supervisor at the FDA.

On August 16, 1993, Sloane first approached the local EEO office regarding alleged discrimination by the PHS and the FDA. On January 10, 1994, Sloane filed an informal EEOC complaint; on March 10, 1994, he filed a formal EEOC complaint.

On February 2, 1995, Sloane commenced this action against appellee Donna Shalala and two other government officials, alleging discrimination and retaliation under both Title VII and the ADEA. The trial judge dismissed Sloane's retaliation claims at the end of his case

3

in chief. After a jury trial, the district court ruled against Sloane on all of his discrimination claims. Sloane now brings this appeal, solely on the basis of his Title VII racial discrimination claims.

II.

As a threshold matter, appellee contends that the district court should have dismissed appellant's Title VII claims because appellant failed to exhaust the available administrative remedies in a timely manner. We agree.

It is well-established that a district court must dismiss a Title VII claim if the plaintiff fails to seek EEO counseling within the prescribed time period. See, e.g., Nealon v. Stone, 958 F.2d 584, 589-90 (4th Cir. 1992); Zografov v. V.A. Medical Center, 779 F.2d 967, 968-69 (4th Cir. 1985). Appellant appears to have been subject to two different limitation periods. On the one hand, as a government employee, appellant was required to seek EEO counseling within forty-five days of the allegedly discriminatory event. See 29 C.F.R. § 1614.105(a)(1) (1998). On the other hand, as a PHS officer, under the more stringent standards of the PHS's own regulations, appellant was required to seek EEO counseling within thirty, rather than forty-five, days of the precipitating incident. J.A. at 1363. Assuming, arguendo, that the more generous general regulation for government employees governs appellant's case, appellant must demonstrate one of two things: either that he sought EEO counseling within forty-five days of one of the allegedly discriminatory events pleaded in his complaint, or that he was subject to a "continuing violation" at the time he sought EEO counseling.

Appellant fails in both respects. First, appellant does not demonstrate that he sought EEO counseling within forty-five days of an allegedly discriminatory event. Even assuming that appellant can be said to have sought EEO counseling on August 16, 1993 -- the date of his first contact with the EEO office -- rather than on January 10, 1994 -- the date he filed his first EEOC complaint-- appellant has not alleged that any discriminatory events occurred in the preceding forty-five days. The nearest allegedly discriminatory event -- appellant's poor performance evaluation from his FDA supervisor --

4

occurred no later than June 1, 1993, well outside the forty-five-day period.

Second, appellant does not show that he was suffering from a "continuing violation" at the time he sought EEO counseling. This Circuit has never adopted a test for what constitutes a continuing violation; our sister circuits, however, have developed a number of variations. See, e.g., DeNovellis v. Shalala, 124 F.3d 298, 307 (1st Cir. 1997) (finding continuing violation in cases in which violation is systemic or serial); Malhotra v. Cotter & Co., 885 F.2d 1305, 1310 (7th Cir. 1989) (finding continuing violation whenever "plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory mistreatment"); Berry v. Board of Supervisors, 715 F.2d 971, 981 (5th Cir. 1983) (finding continuing violation when three-prong test involving type of conduct, frequency of alleged acts, and degree of permanence of acts is satisfied).

It is unnecessary for us to adopt any of these tests in this case, for the simple reason that appellant fails to establish a continuing violation under any of them. As the Supreme Court has stated, the "critical question" in a continuing violation case is "whether any present violation exists." United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). Events that simply constitute the inevitable consequences of an earlier, allegedly discriminatory decision do not suffice to create a continuing violation, see Delaware State College v. Ricks, 449 U.S. 250, 257-58 (1980), nor do "separate and completed events," Lawson v. Burlington Industries, Inc., 683 F.2d 862, 863-64 (4th Cir. 1982).

In this case, all of the allegedly discriminatory events that occurred after the original denial of appellant's waiver application in 1989 were either consequences of that denial, or entirely separate events altogether. The imposition of sanctions on appellant in 1991 directly resulted from his failure to comply with the licensing requirement in the wake of the allegedly discriminatory denial of his waiver application in 1989. And appellant's poor performance evaluations in 1993 and 1994 had no connection whatsoever with the denial of his waiver application in 1989: unlike the denial of the waiver, which involved officials at the PHS, the agency that employed appellant, the poor performance evaluations were conducted by appellant's supervisor at the

5

FDA, the wholly separate agency at which appellant was stationed at the time.

Appellant can avoid the requirement of timely exhaustion only by providing evidence that he was unaware of the time limits for seeking EEO counseling, see 29 C.F.R. § 1614.105(a)(2) (1998), or that the government engaged in affirmative misconduct in connection with his failure to seek timely counseling, see Zografov, 779 F.2d at 969-70. Appellant makes no such showing. Therefore, the district court should have dismissed his claims.

III.

Even if we were to hold that appellant had exhausted the available administrative remedies in a timely manner, we would nevertheless reject his underlying substantive claims. Appellant makes two claims: that the trial judge erred by failing independently to adjudicate equitable claims arising from events occurring before the enactment of a jury right, and that the jury erred by finding that the justifications offered by the PHS for its allegedly discriminatory behavior were not pretextual. Each of these claims lacks merit.

Appellant bases his first claim on section 102 of the Civil Rights Act of 1991, which had two significant consequences for plaintiffs bringing Title VII actions. First, the provision allowed Title VII plaintiffs to recover damages, provided that the actionable conduct occurred after the Civil Rights Act of 1991 took effect. See Landgraf v. USI Film Prods., 511 U.S. 244, 281-83 (1994). Second, it entitled Title VII plaintiffs to a jury trial, provided the same condition was met. See id. at 280-81.

Based on this provision, appellant argues that the trial judge erred by failing to make separate rulings of law on those Title VII claims that were based on pre-1991 conduct ("pre-1991 claims"), for which only an equitable remedy was available. This claim, however, is flawed for two reasons. First, and more simply, at no stage during the trial did appellant ask the judge to rule on any separate pre-1991 claims. To the contrary, as noted above, appellant contended that he was subject to a continuing violation at the time he commenced this action, an argument that squarely forecloses the existence of any sep-

6

arable pre-1991 claims at all. Second, to the extent that any distinct pre-1991 claims did exist, the judge resolved those claims at the conclusion of the trial. Although the judge did not refer to "pre-1991 claims" in his final order, he expressly ruled against appellant on all of his claims, see J.A. at 37, and subsequently denied appellant's motion for "judgment on pre-1991 claims" on the ground that those claims had already been decided in his final order, id. at 835. Consequently, because the trial judge did resolve any separate claims arising from events occurring before the enactment of a jury right, to the extent that such claims could be said to exist, the trial judge committed no error.

Appellant next claims that the jury erred by finding that the justifications offered by the PHS for its allegedly discriminatory behavior were not pretextual. To succeed on this claim, appellant must demonstrate that the jury's finding was not supported by substantial evidence in the record as a whole. See, e.g., Evington v. Forbes, 742 F.2d 834, 835 (4th Cir. 1984). We hold that appellant has failed to make such a showing. Indeed, to the contrary, as the government points out, appellant fails even to demonstrate that the individuals involved in the allegedly discriminatory behavior were aware of his minority status. Two members of the LWB testified that the LWB did not have information on the race of applicants while considering waiver applications, see J.A. at 695, 697-98, 729, and the Surgeon General testified that he had no knowledge of appellant's race while reviewing the LWB's recommendation, see id. at 680. No evidence in the record contradicts this testimony. In the absence of any evidence even to suggest that any of the principal actors were aware of appellant's race, it is impossible to conclude that the justifications for their actions were pretextual to hide a racial motive. In any event, because the jury's finding on pretext was supported by substantial evidence in the record, we uphold that finding.

CONCLUSION

The judgment of the district court is vacated and remanded with instructions to dismiss.

VACATED AND REMANDED

7