Eugene TALBOT, Plaintiff,

v.

MOBIL CORPORATION and Mobil
Business Resources Corporation,
Defendants.

No. Civ.A. 98–1825–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 26, 1999.

Michael T. Leibig, Carla M. Seigel, Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C. Fairfax, VA, for plaintiff.

Barbara B. Brown, Neal D. Mollen, Paul, Hastings, Janofsky & Walker Washington, DC, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue in this age discrimination case is whether plaintiff's claims are barred by the statute of limitations. Plaintiff essentially asserts two claims, one based on the 1996 elimination of his permanent position and reassignment to a temporary position, and one based on his 1998 termination from the temporary position. Because the 1996 and 1998 events are not "continuing violations," plaintiff's claim based on the 1996 event is time barred. Nor can this claim be rescued by the doctrines of equitable tolling or equitable estoppel. Accordingly, defendant's motion to dismiss must be granted as to the claim based on the 1996 event and denied as to the claim based on the 1998 event.

### I.[1]

Plaintiff Gene Talbot worked for Mobil for more than 31 years. During those 31 years, he advanced eight grade levels to Salary Grade 18, where his performance was repeatedly rated as Highly Effective. Yet, despite his years of apparently satisfactory service, his future, it turns out, was anything but secure. Between 1993 and 1996, Mobil conducted a study of the age distribution of its employees, concluding that it had a "bench strength" problem, *i.e.*, too many older people in the upper echelon positions. As a result, Mobil undertook a Staff Redesign Project aimed at remedying the "bench strength" problem by eliminating positions and laying off employees. Plaintiff fell victim to the Staff

---

1. On a motion to dismiss, the facts stated here, which are taken from plaintiff's complaint, are presumed to be true. *See Martin Marietta Corp. v. International Telecom. Satellite Org.*, 991 F.2d 94, 97 (4th Cir.1992) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)).

Redesign Project; he was notified in March 1996 that his job was eliminated, and further notified in May 1996 that he was eligible for separation because none of the redesigned positions had been found for him. Instead, those redesigned positions were given to younger, less qualified employees.[2]

As it happened, plaintiff did not then leave Mobil, for in July 1996, plaintiff was offered a "stay" bonus to remain with Mobil in a two year temporary position at a demoted level. At the same time, plaintiff received an email from his supervisor stating that if the temporary work were to continue beyond the two year period, he would be considered for this continuing work. Because plaintiff believed that the work would continue beyond the two years, he concluded he would be employed until his retirement.

Near the end of the two year period, on April 9, 1998, plaintiff learned that although the work he had been doing would in fact continue, he would not be retained to perform this work after the two year period expired. Next, less than a week later, on April 15, 1998, the majority of his duties were transferred to a significantly younger, less qualified employee. Roughly a month and a half after that, on May 28, 1998, plaintiff received a separation package, and he was actually terminated from Mobil's payroll in July 1998.

A few months later, on September 22, 1998, plaintiff filed a charge with the Fairfax Office of Human Rights, alleging age discrimination. Thereafter, he instituted this suit on December 23, 1998. Mobil contends the action is time barred.

**2.** Because the facts as recited here appear so adverse to Mobil, it is important to recall that the recitation of facts is taken from the allegations of the complaint, which are presumed to be true. *See supra* note 1.

**3.** The ADEA's requirements for the filing of suits under § 626 change where a state has a law prohibiting age discrimination that autho-

## II.

■ Analysis properly begins with (i) identifying the applicable limitations period and (ii) determining the claim accrual date or dates. The first of these is undisputed; in Virginia, a charge of discrimination under the ADEA must be filed within 300 days after the alleged unlawful practice occurred. *See* 29 U.S.C. § 626(d)(2).[3] The second—determining the claim accrual date—is controlled by *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). There, the Supreme Court clarified that for statute of limitations purposes, a discrimination claim accrues at the time of the discriminatory acts, not when the consequences of the acts become most painful. *See Ricks*, 449 U.S. at 258, 101 S.Ct. 498. In Ricks, a teacher was denied tenure, but given a temporary terminal contract to stay for an additional year while he sought other jobs. The Supreme Court held that the limitations period began when he was denied tenure, not when he was removed from the payroll a year later. In the words of Justice Powell, "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *See id.* at 257, 101 S.Ct. 498.

■ Applied to the instant facts, *Ricks* compels the conclusion that plaintiff's discrimination claim stemming from Mobil's discontinuing his job and demoting him accrued in 1996 and is therefore barred unless otherwise saved. *See infra.* Yet Mobil's contention that the entire action is barred is off the mark, as plaintiff here alleges discrimination both when he was terminated from his original position in July 1996, and when he was given notice

rizes a state authority to grant or seek relief from the discriminatory practice. *See* 29 U.S.C. § 633(b). And, in these circumstances, § 626(d)(2) provides that the charge must be filed within the earlier of 300 days after the alleged unlawful practice occurred or 30 days after the receipt of notice of termination of proceedings.

that his temporary position would not continue in April 1998. Thus, contrary to defendant's contentions, under *Ricks*, discrimination at discharge from the temporary position may be claimed, distinct from any discrimination that may have infected termination of the permanent position.[4] In short, while a claim based on the 1996 event may be time barred, depending on other considerations, the claim based on the 1998 event is timely.

■ But plaintiff does not concede that this claim for the 1996 event is barred; although he acknowledges that under *Ricks*, the claim accrued in 1996, he contends that the 1996 and 1998 events were part of a continuing violation such that the 1998 event serves to sweep the 1996 event within the limitations period. Put differently, plaintiff contends that the 1998 claim was a continuation of Mobil's discriminatory policies and acts that commenced in 1996 so that the claims based on the 1996 events that would otherwise be barred by the statute of limitations are not in fact barred. In support, plaintiff cites *Taylor v. Home Insurance Co.*, 777 F.2d 849, 857 (4th Cir.1985), a case involving two demotions, one within the limitations period and one outside it. The earlier demotion was a continuing violation and hence timely because "the unlawful practice ... continued into the limitations period...." *See id.* Yet closely read, Taylor is not controlling as it does not provide a specific test for identifying when an action is part of a continuing practice, *i.e.*, a continuing violation, and when it is merely one of multiple discrete actions. At most Taylor states

that to establish a continuing violation "[t]he proof must establish that the unlawful practice is continuing or ongoing, and that it currently affects the claimant." *See id.* This seems to be a necessary, but not sufficient defining condition. Moreover, *Taylor* is factually distinguishable. There, the evidence supported an ongoing practice, rather than two discrete events.[5] In contrast, here, according to plaintiff's complaint, in both 1996 and 1998, Mobil terminated the position plaintiff was in, and gave the work, which continued after the terminations, to younger employees, as part of its overall plan to change the age distribution within the company. But there are no allegations of any discriminatory activity with respect to plaintiff between the two acts that would make these acts anything other than the two independent actions they facially appear to be.

■ Although this circuit has yet to adopt a definitive test to distinguish between continuing violations and multiple discrete actions, unpublished opinions forecast the adoption of a test that construes continuing violations narrowly. For example, in *Arellano v. Henderson*, 165 F.3d 910, 1998 WL 792233 (4th Cir. Nov.16, 1998), the panel stated that " '[a] continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period.' " *See id.* (quoting *Dasgupta v. University of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997)).[6] This test, which is consistent with

---

4. *See Ricks*, 449 U.S. at 257, 101 S.Ct. 498.

5. Specifically, i) Taylor was transferred from Charlotte to Atlanta and demoted; ii) the office manager in Atlanta, who was 54, was demoted shortly after Taylor's arrival, and replaced by a younger man; iii) the new office manager told Taylor that the Atlanta marketing manager was too old, and shortly thereafter the marketing manager was demoted and replaced by a younger man; iv) the officer manager made reference to Taylor's age in the context of needing to find him

different work; v) Taylor's authorities and duties were curtailed thereafter; vi) the office manager hired and fired some of Taylor's subordinates without consulting Taylor, and vii) Taylor was transferred back to North Carolina in a demoted position and given impossible quotas to fulfill. *See Taylor*, 777 F.2d at 851–54.

6. In an unpublished disposition issued two days after *Arellano*, the panel noted that "[t]his Circuit has never adopted a test for what constitutes a continuing violation." *See*

pre-*Taylor* precedent,[7] sensibly limits the scope of the continuing violation concept. Were courts to adopt a broader view, such as *Taylor*, loosely read, might invite, the result might well be the statutorily unwarranted resuscitation of stale claims. Indeed, the statutory scheme's relatively short limitations periods are designed to ensure that acts of discrimination are promptly reported and remedied. And courts do violence to this design when they construe expansively the judicially-created doctrine of continuing violations. In summary, where, as here, the alleged continuing violation consists of separate and distinct acts, each of which could reasonably have been made the subject of a lawsuit at the time it occurred, the allegation of a continuing practice of discrimination is insufficient to save the actions outside the statute of limitations period from the statutory bar. Put differently, where the charge relates to two or more acts, the statute of limitations issue must be evaluated separately as to each action, unless the discriminatory character of the individual actions was unclear until the later actions occurred.

> *Sloane v. Shalala*, 166 F.3d 334, 1998 WL 801499, *2 (4th Cir. November 18, 1998). In that case, the panel surveyed the various tests of the circuits, including the Seventh Circuit test cited in *Arellano*. *See id.* (citing *DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir. 1997) (finding continuing violation in cases in which violation is systemic or serial); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989) (finding continuing violation whenever "plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory treatment"); *Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir.1983) (finding continuing violation when three-prong test involving type of conduct, frequency of alleged acts and degree of permanence of acts is satisfied)); *see also* 45B Am.Jur.2d, Job Discrimination § 1424 (1993) ("In an ADEA case, a continuing violation may exist when: (1) the employer's decision-making process occurs over time, making it difficult to pinpoint the exact date of a violation; (2) an employer's open and express policy is allegedly discriminatory; and (3) where the challenged practice is shown only by a series

### III.

Plaintiff contends that even if the claims cannot be characterized as continuing violations, the doctrines of equitable tolling and equitable estoppel apply to rescue the claim based on the 1996 event from the time bar. This contention fails: neither doctrine applies in these circumstances.

▉ The equitable tolling inquiry focuses on any acts of the defendant that affect the plaintiff's knowledge of the discriminatory action, and "applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *See English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir.1987). For this doctrine to apply, plaintiff must show i) that Mobil attempted to mislead him and ii) that he reasonably relied on the misrepresentation by neglecting to file a timely charge. *See id.* Here, there are no allegations that Mobil concealed anything regarding the 1996 event; plaintiff possessed all the facts necessary to file a charge as to the 1996 event well within the applicable limitations period.[8] Thus, equitable tolling is not applicable here.

> of discrete allegedly discriminatory acts."). In *Sloane*, the court concluded that the facts of case before it met none of the possible tests, and therefore, the court did not adopt any particular test. *See Sloane*, 1998 WL 801499, at *3.

7. *See Lawson v. Burlington Indus. Inc.*, 683 F.2d 862, 863–64 (4th Cir.1982) ("It is well established that a layoff from employment constitutes a completed act at the time it occurred, and that an employer's failure to recall or rehire does not constitute a continuing violation of the ADEA. Each alleged discriminatory recall constitutes a separate and completed act by the defendant.").

8. Plaintiff does allege that since he did not receive his termination package until two years later, he was not notified of his rights under the Older Worker's Protection Act until that time. Because he is asserting an ADEA claim, and because he does not appear to assert that he was not aware of his ADEA rights because of defendant's failures, this allegation is not material to the application of equitable tolling.

Equitable estoppel, which differs from equitable tolling, "applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." *See English,* 828 F.2d at 1049. Thus equitable estoppel will operate to toll the statute of limitation where the employee's failure to file in timely fashion results from i) a deliberate design by the employer or ii) actions that the employer should unmistakably have understood would cause the employee to delay filing his charge. *See id.* To attempt to meet this standard, plaintiff alleges that defendant gave him the temporary job, and at the same time, gave him expectations in an email from his supervisor that he would be considered for work beyond that job, thus taking actions that were deliberately intended to cause plaintiff to delay filing his charge. This allegation falls short. Although "the remedial goals of the ADEA cannot be circumvented by an employer's coercive practices no matter how subtle the form," [9] Fourth Circuit case law directly on point precludes application of equitable estoppel on these facts. In *English v. Whitfield,* 858 F.2d 957 (4th Cir.1988), the panel stated that " 'an employee's hope for a continuing employment relationship cannot toll the statute absent some employer conduct likely to mislead an employee into sleeping on his rights.' " *See id.* at 963 (citation and ellipses omitted). And the panel went on to say that "[u]nder this rule, even an employer's confirmation of that hope could not estop the employer absent some indication that the promise was a quid-pro-quo for the employee's forbearance in filing a claim." *See id.* There is no such indication of a quid-pro-quo here. Thus, equitable estoppel is also inapplicable to the case at bar.

**9.** *See Felty v. Graves–Humphreys Co.,* 785 F.2d 516, 519–20 (4th Cir.1986) (equitable estoppel applies were generous severance package expressly conditioned on not discussing termination).

**IV.**

For the foregoing reasons, defendant's motion to dismiss on the basis of the statute of limitations is granted in part and denied in part. Specifically, the motion is granted insofar as the complaint asserts a claim for discrimination based on the 1996 elimination of his permanent position and the failure to locate a redesigned position for him, while giving such positions to younger, less qualified workers; it is denied in all other respects.[10]

An appropriate Order has issued.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

**10.** Not addressed here is whether evidence of the 1996 event, including evidence of the Mobil age distribution study, the Staff Redesign Project, etc. may be admissible at trial under Rules 402 and 403, Fed.R.Evid., as probative of a discriminatory animus with respect to the 1998 claim.