Lydia Baker BURKE, Plaintiff,

v.

**AT & T TECHNICAL SERVICES CO., INC., and Lucent Technologies Technical Services Company, Inc., Defendants.**

No. C.A. 99–114–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 14, 1999.

William F. Burton, Stein, Mitchell & Mezines, Washington, D.C., David C. Sim-mons, Carter & Coleman, Alexandria, VA, for plaintiff.

Stephen Robinson, Ronda L. Brown, McGuire Woods Battle & Boothe, LLP, McLean, VA, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This race discrimination case comes before the Court on defendant's threshold motion to dismiss the complaint. At issue, specifically, are the following questions:

(i) Must a terminated employee's retaliation claim be administratively exhausted before it can be advanced in court?

(ii) Under what circumstances can the continuing violation doctrine rescue otherwise untimely claims of discriminatory demotion and failure to promote?

(iii) Is employment discrimination on the basis of race as alleged here sufficient to establish a claim for intentional infliction of emotional distress under Virginia law?

### I.[1]

Ms. Burke, an African–American woman, was an employee of AT & T Technical Services Company, today known as Lucent Technologies Technical Services Company, from October 1992 to November 1997. In 1992, she was hired as the Customer Service Center Manager for AT & T Technical Services at the CIA facility in Langley, Virginia. As Customer Service Manager, Ms. Burke supervised eight Customer Service Representatives and trained project managers, technicians, and customers. Ms. Burke remained in this position, which at some point during her tenure was restyled "Manager of the Assignment Bureau," until 1995. In September 1995, Ms. Burke was demoted to Customer Service Representative and Scott Rice, a white male alleged to be less qualified than Ms. Burke, was placed in the position of Man-

---

1. On a motion to dismiss, the material facts alleged in the complaint are taken as true, solely for the disposition of the motion. *Hi-shon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

ager of the Assignment Bureau. At the time she was demoted, Ms. Burke had also been acting as Supervisor of the Assignment Bureau. Immediately after her demotion, she asked Mr. Rice whether she might apply for the position of Supervisor of the Assignment Bureau. He told her this position would not be filled, yet the next day the announcement was made that Mr. Rice had appointed Dolores McBride, a white female, to serve as Supervisor. According to the complaint, when Ms. Burke was demoted in 1995, Mr. Rice and other AT & T employees told her that her reassignment was only temporary, when in fact, the demotion and transfer were permanent.

In or around October 1996, Ms. Burke was again demoted and reassigned to a customer support position in which her duties were limited to answering the telephone, responding to customers' questions, and distributing answering machines. She alleges that on this occasion she was demoted by Nick Vuxson, who is white and who similarly demoted and reassigned three of the other four African–American employees under his supervision.

In February 1997, Ms. Burke reapplied for the position of Manager of the Assignment Bureau, which became available when Mr. Rice left the position. The position was filled by a white female, alleged to be less qualified than Ms. Burke. In October 1997, AT & T offered Ms. Burke a position as Project Manager. She reluctantly accepted the offer, though she felt she was overqualified for the position. In early November 1997, AT & T employee Kathy Kunkle, who is white, informed Ms. Burke that the Project Manager position she had accepted had been withdrawn. She then advised Ms. Burke that because the company had no positions open for which she was qualified, she would be discharged. She further advised Ms. Burke that she would notify her if any position for which she was qualified became avail-

able in the following year. In April 1998, Ms. Burke learned that her former position as a Customer Service Manager in the Assignment Bureau had become available and had been filled, though she had not been advised of this opening. Ms. Burke also learned that other positions for which she was qualified had become available since November 1997. Yet, AT & T did not notify her of any of these openings.

Ms. Burke alleges that these various adverse employment actions were the result of her race, not her performance. In this regard, she alleges that from 1994 to 1997, she received annual performance appraisal ratings of "outstanding" in her job. She also alleges that after she filed her Charge of Discrimination with the Fairfax County Human Rights Commission on May 29, 1997,[2] her employer retaliated against her by (i) refusing to restore her to her former managerial position, (ii) revoking the previously offered and accepted Project Manager position, (iii) terminating her employment in November 1997, and (iv) failing to advise her of any suitable positions that became available for which she might apply after her termination. Thus, she brings a race discrimination claim and a retaliation claim under Title VII of the Civil Rights Act of 1964 [3] and a Virginia common law claim of intentional infliction of emotional distress. AT & T moves to dismiss the retaliation and intentional infliction of emotional distress claims in full and the race discrimination claim in part.

## II.

The applicable standard in resolving a threshold dismissal motion is well established. Dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is only appropriate where, construing the allegations in the light most favorable to the plaintiff and assuming the facts alleged to be true, it is clear as a matter of law that

2. This charge was thereafter referred to the EEOC.

3. 42 U.S.C. § 2000e *et seq.*

no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989). Yet, where a plaintiff colorably states facts which, if proven, would entitle her to relief, a motion to dismiss should not be granted. *Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982). Similarly, in a motion to dismiss pursuant to Rule 12(b)(1), Fed.R.Civ.P., on the basis that the complaint, on its face, fails to state a basis for subject matter jurisdiction, the court "assumes all facts in the complaint are true, thus providing the plaintiff with the same procedural protections as a Rule 12(b)(6) determination." *Lane v. David P. Jacobson & Co.,* 880 F.Supp. 1091, 1094 (E.D.Va.1995); *see also Dickey v. Greene,* 729 F.2d 957, 958 (4th Cir.1984); *Adams,* 697 F.2d at 1219.

## III.

AT & T moves to dismiss Ms. Burke's retaliation claim (Count II of the complaint) pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Ms. Burke failed to file a timely, verified charge of retaliation within 300 days of the alleged act as required by Title VII. *See* 42 U.S.C. § 2000e–5. Ms. Burke did not formally file a charge of retaliation with the EEOC, although after her termination both she and her counsel sent unverified letters to the EEOC requesting that her discrimination charge be amended to include a claim of retaliation. AT & T argues that since the letters were not sworn and the EEOC did not have the statutorily mandated 180 days to investigate the retaliation claim raised in the letters before the issuance of the right to sue letters, that this notice was not sufficient to comply with the statute. Ms. Burke responds that under *Nealon v. Stone,* 958 F.2d 584 (4th Cir.1992), a separate administrative charge is not a prerequisite to bringing a retaliation suit under Title VII. AT & T in turn responds that *Nealon* is not applicable here.

In *Nealon,* the Fourth Circuit held that a plaintiff may raise a retaliation claim for the first time in federal court, finding this rule to be "the inevitable corollary of [the] generally accepted principle that the scope of a Title VII suit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission.'" *Id.* at 590 (quoting *Hill v. Western Elec. Co.,* 672 F.2d 381, 390 n. 6 (4th Cir.1982)). The Fourth Circuit also noted that the Seventh Circuit, in considering this question, had recognized that various practical concerns counseled against requiring a plaintiff to file a retaliation claim with the EEOC, including, in the Seventh Circuit's words, that "having once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation." *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989) (quoted in *Nealon,* 958 F.2d at 590).

AT & T, seizing upon this language, argues that *Nealon* stands for the proposition that in some, but not all, circumstances a retaliation claim may be raised for the first time in court and that this case falls outside of the exception to administrative review carved out in *Nealon.* Specifically, AT & T argues that since Ms. Burke was no longer employed by AT & T when she sought to file the retaliation charge, she could not be "gun shy" about inviting further retaliation and thus *Nealon* does not apply to her.

AT & T's contention fails both factually and legally. First, on the facts, while the retaliation Ms. Burke complains of includes her termination, it is not true that after she was terminated she was necessarily beyond the company's reach and without fear of further retaliation. Ms. Burke alleges that AT & T promised

to keep her advised of job openings for which she was qualified. Even after her termination, then, by filing a second EEOC charge alleging retaliation, Ms. Burke could have provoked further retaliation resulting in the loss of information about new job openings and opportunities to reapply for work with AT & T. In other words, Ms. Burke might be as "gun shy" as the Seventh Circuit's hypothetical plaintiff. Second, while the Fourth Circuit supported its conclusion that a plaintiff may raise a retaliation claim for the first time in federal court with the Seventh Circuit language, these "practical considerations" were not the primary basis for the Fourth Circuit's *Nealon* decision. Rather, the Fourth Circuit concluded that since retaliation claims are related to and grow out of allegations contained in the EEOC charge, they are appropriately raised in federal court for the first time. *See Nealon,* 958 F.2d at 590.[4] *Nealon,* then, is not limited to retaliation claims asserted while the claimant remains employed; it applies to all retaliation claims that arise after a plaintiff has filed an administrative charge with the EEOC because such retaliation claims by definition grow out of the particular discrimination charges filed with the EEOC.[5] Indeed, *Malhotra* itself, the Seventh Circuit case from which the language in question was drawn, concludes that even in those cases where plaintiff has been fired and there is no further retaliation possible by defendant, the rule that no separate administrative charge alleging retaliation is required applies. *See Malho-*

*tra,* 885 F.2d at 1312 (explaining that in the instant case, since plaintiff had been fired, there was nothing more his employer could do to him if he filed a second charge, yet nonetheless following the general rule excusing administrative exhaustion of retaliation claims). For these reasons, then, AT & T's motion to dismiss Count II of Ms. Burke's complaint must fail.

## IV.

AT & T also seeks dismissal of those portions of Count I alleging racially discriminatory acts occurring in 1995, namely the initial demotion and the denial of the opportunity to apply for the position of Assignment Bureau Supervisor. These allegations, AT & T argues, are time-barred and outside the scope of the charge of discrimination Ms. Burke filed with the EEOC. Specifically, in her May 29, 1997, charge of discrimination, she alleged that she was demoted in 1996 and replaced by a less qualified white male, that the supervisor who demoted her had unfairly demoted two of the three black employees under his supervision in recent months, and that in 1997 she reapplied for the position from which she was demoted, but it was awarded to a less qualified white female. No reference is made in this charge to the events of 1995. Since Ms. Burke did not file a charge related to the 1995 incidents within 300 days of their occurrence, AT & T contends that there is no jurisdiction over these claims. *See* 42 U.S.C. § 2000e–

---

4. *See also Brown v. Runyon,* No. 96–2230, 1998 WL 85414 at *3 (4th Cir. Feb.27, 1998) (characterizing *Nealon* as "holding that retaliation claims almost always relate back to previously filed EEO charges and, therefore, may be raised for the first time in district court without the requirement that a plaintiff have exhausted his administrative remedies").

5. On the other hand, when an employer's act of retaliation does not "grow out" of an EEOC charge while that charge is pending before the agency, as for instance when an employer retaliates against a plaintiff for engaging in some form of protected activity prior or to her filing of any charge with the EEOC,

then plaintiff is not excused from exhausting her administrative remedies. *See Brown v. Runyon,* No. 96–2230, 1998 WL 85414 at *3–4 (4th Cir. Feb.27, 1998). Thus, when a plaintiff could have alleged retaliation in her original EEOC complaint and fails to do so, she may not thereafter bring a retaliation claim in the courts. *See Wilson v. Dimario,* No. 97–2252, 1998 WL 168346, at *2 (4th Cir. March 31, 1998); *Crosten v. Kamauf,* 932 F.Supp. 676, 683 (D.Md.1996); *Keegan v. Dalton,* 899 F.Supp. 1503, 1511 (E.D.Va. 1995); *Riley v. Technical and Management Servs. Corp., Inc.,* 872 F.Supp. 1454, 1460 (D.Md.1995).

5; *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 962–63 (4th Cir. 1996) (noting that the allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint); *Chisholm v. United States Postal Serv.,* 665 F.2d 482 (4th Cir.1981) (holding that the scope of a Title VII action is confined by the scope of the administrative investigation that can reasonably be expected to follow the administrative charge of discrimination).

Ms. Burke responds that Count I of her complaint properly alleges a continuing violation and that none of the allegations are time-barred, since part of the continuing violation occurred within the statutory period. Specifically, Ms. Burke contends that it would be unreasonable to require her to have challenged the earlier incidents at the time they occurred since at that time she did not have the information necessary to comprehend the racially discriminatory nature of the 1995 incidents, which apparently became clear to her only when she and other black employees were demoted in 1996. Thus, she argues that the 1995 incidents should be considered part of a continuing violation since these incidents " 'could not reasonably have been expected to be made the subject of a lawsuit when [they] first occurred because [their] character as a violation did not become clear until [they were] repeated during the limitations period.' " *Arellano v. Henderson,* No. 98–1348, 1998 WL 792233, at *2 (4th Cir. Nov.16, 1998) (quoting *Dasgupta v. University of Wis. Bd. of Regents,* 121 F.3d 1138, 1139 (7th Cir.1997)).

The Fourth Circuit has not explicitly adopted a test for what constitutes a continuing violation in the context of employment discrimination. *See generally Talbot*

*v. Mobil Corp.,* 46 F.Supp.2d 468, 471 (E.D.Va.1999) (discussing the Fourth Circuit's unpublished continuing violation jurisprudence). Nevertheless, the unpublished *Arellano* decision suggests that an employee need not file a discrimination charge until facts supporting a discrimination claim are apparent to a reasonably prudent person. *See Arellano,* 1998 WL 792233, at *2. Furthermore, in a second unpublished opinion, the Fourth Circuit, while stating that the circuit has not yet adopted a continuing violation test, noted that allegations of " 'separate and completed events' " were not sufficient to make out a continuing violation claim. *See Sloane v. Shalala,* 97–2295, 1998 WL 801499, at *3 (4th Cir. Nov. 18, 1998) (quoting *Lawson v. Burlington Indus., Inc.,* 683 F.2d 862, 863–64 (4th Cir.1982)). Left unresolved by the Fourth Circuit is the appropriate manner for distinguishing between separate and complete acts of discrimination that may not form the basis for a continuing violations charge and acts of discrimination that would not be apparent to a reasonably prudent person, which may be included in a continuing violations charge when later incidents serve to reveal the discriminatory nature of the acts. To refine this distinction, it is necessary to turn to the case law of other circuits.

■ This case law suggests that to show the 1995 claims are part of a continuing violation, Ms Burke must demonstrate three things: (1) a Title VII violation occurred within the limitations period;[6] (2) this violation was in some way connected with the discriminatory acts occurring outside the limitations period;[7] and (3) a reasonably prudent person would not have recognized the discriminatory nature of the acts occurring outside the limitations period until the occurrence of the acts

---

6. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

7. Were no such connection required, the continuing violation theory "could turn an employment discrimination suit into an inquest

on the employee's entire employment history with the defendant" thus undoing the effectiveness of Title VII's limitations period and its policy of prompt adjudication of grievances. *Malhotra,* 885 F.2d at 1310; *see also Talbot,* 46 F.Supp.2d at 470.

within the limitations period.[8] In the instant controversy, only the second and third prongs of this test are at issue.

In regard to the second prong, the Fifth Circuit has explained that, while "there is no definitive test for what constitutes a continuing violation, the plaintiff must demonstrate more than a series of discriminatory acts." *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir.1998). That is, the otherwise time-barred violation must be somehow "linked" to the violation occurring within the statutory period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). Specifically, the plaintiff must show "an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of the action." *Huckabay*, 142 F.3d at 239. Here, Ms. Burke complains of multiple demotions and failures to promote occurring both inside and outside the limitations period. Since the 1995 discrimination she alleges is of the same type as the later discrimination she alleged and since she alleges recurring incidences of demotions and failures to promote, when all permissible inferences are drawn in favor of the plaintiff, as is required on a threshold motion to dismiss, the 1995 incidents may be characterized as part of an organized scheme that included the later discriminatory acts.[9] *See Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983) (indicating that type of discrimination and recurring nature of discrimination are relevant to determining whether separate discriminatory acts make up a continuing violation).

The remaining question, then, is whether a reasonably prudent person would have recognized the 1995 demotion and denial of promotion as discriminatory. Discrete violations, such as separate failures to promote, may be treated as a single continuing violation when "the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory mistreatment." *Malhotra*, 885 F.2d at 1310. In this analysis, "[t]he focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights." *Huckabay*, 142 F.3d at 238. When no such event has occurred, equitable considerations require that the filing period for a Title VII claim does not begin to run until facts supportive of a charge of discrimination would be apparent to a reasonably prudent person. *See Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1560 (5th Cir.1985). The continuing violation cause of action thus "permit[s] the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994).

While demotion and failure to promote are often "the sort of discrete and salient event[s] that should put an employee on notice that a cause of action has accrued,"[10] this rule is not without exceptions. Thus, the Fifth Circuit affirmed a trial court's finding that an employee was not time-barred from bringing a claim for a failure to promote when the employee

---

8.  *See, e.g., Malhotra*, 885 F.2d at 1310.

9.  *Cf. Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1561 (5th Cir.1985) (noting that in certain contexts, "the persistence of a system of promotion and transfers animated by a spirit of unlawful discrimination constitutes a continuing violation of Title VII").

10. *Huckabay*, 142 F.3d at 240. In *Huckabay*, plaintiff alleged racial harassment over a period of years at his place of employment. During this period, but more than 300 days before he filed a charge of discrimination with the EEOC, plaintiff was demoted and was not considered for a supervisory job when a position opened for which he was qualified. On summary judgment, the court found the harassment to constitute a continuing violation, but ruled that the demotion and the failure to promote were discrete acts not included in the violation that was the continuous harassment.

had no concrete evidence that she was being discriminated against until the occurrence of a second, similar incident within the statutory limitations period. *See Glass*, 757 F.2d at 1562. In coming to this conclusion, the Fifth Circuit noted that "[a] reasonably prudent employee, one who is reasonably ambitious, conscientious, and trusting . . . will not necessarily conclude that her employer is an illegal discriminator on the basis of . . . one act that is at least arguably non-discriminatory" in the absence of additional evidence.[11] In other words, when the acts of discrimination are "ambiguous or incomplete" at the time they occur, a reasonably prudent plaintiff may not be alerted to the existence of a cause of action at that time. *Dasgupta*, 121 F.3d at 1140. As a result, when considering whether a continuing violation has occurred, "the particular context of individual employment situations requires a fact-specific inquiry that cannot easily be reduced to a formula." *Huckabay*, 142 F.3d at 239.

■ On a threshold motion to dismiss, the necessarily fact-specific inquiry is stymied by the anemic state of the factual record. In the present instance, while Ms. Burke's 1995 demotion and replacement by a less qualified white employee might arguably have alerted her to the fact that the demotion was discriminatory, the current state of the record does not permit this inference to be drawn with any confidence. First, Ms. Burke's complaint does not disclose when she learned that the employee replacing her was less qualified than herself. Second, Ms. Burke alleges that at the time of the demotion, she was told that her change in job status was temporary and only later learned that it was in fact permanent, but the complaint does not dis-

close the moment at which it became clear that the demotion was not, in fact, temporary. The qualifications of her replacement and the permanence of her change in employment status are undeniably relevant to any reasonable assessment of whether the discriminatory nature of the demotion was apparent at the time of its occurrence, rather than merely ambiguous and incomplete. Thus, at this time the facts are not sufficiently developed to conclude that a reasonably prudent person in Ms. Burke's position would have understood her demotion to be discriminatory in 1995. Similar factual difficulties prevent any conclusions from being drawn as to the reasonableness of Ms. Burke's beliefs regarding the 1995 failure to promote. Since AT & T has failed to carry the heavy burden required on a threshold motion to dismiss, the claims regarding the 1995 incidents survive, pending further factual development. AT & T's motion to dismiss Count I in part must therefore be denied.

## V.

■ Finally, AT & T seeks the dismissal of Count III of Ms. Burke's complaint, which alleges intentional infliction of emotional distress. This claim may be quickly dealt with. Virginia law requires that a plaintiff seeking to recover for intentional infliction of emotional distress demonstrate that (1) the wrongdoer's conduct is intentional or reckless; (2) the conduct is outrageous and intolerable; (3) the alleged wrongful conduct and emotional distress are causally connected; and (4) the distress is severe. *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145, 148 (1974). In her complaint a plaintiff must plead all the facts necessary to establish this cause of action. *Ely v. Whitlock*, 238 Va. 670, 385 S.E.2d 893, 897 (1989).

11. The Fifth Circuit came to this conclusion despite the fact that in *Glass*, the plaintiff's supervisor had not only failed to promote the plaintiff to the position he was vacating, but explicitly told her that she would not be named to his position because he wanted his replacement to be a man. *Glass*, 757 F.2d at 1561. Even with such strong evidence indicating that a reasonably prudent plaintiff would have been on notice to protect her rights at that point, the court held that the district court's finding that the plaintiff had no actual knowledge of intentional discrimination at the time of the failure to promote was not clearly erroneous.

In this instance, Ms. Burke fails to meet the second prong of the test. The racial discrimination that she alleges, consisting of demotion and ultimate termination, while insidious and unacceptable, cannot be labeled the sort of rare offense that is so "atrocious" that it "[goes] beyond all possible bounds of decency" and is "utterly intolerable in a civilized society." *Russo v. White*, 241 Va. 23, 400 S.E.2d 160, 162 (1991). Indeed, courts applying the Virginia rule have uniformly indicated that in the great majority of cases, employment discrimination will not meet this demanding standard. *See, e.g., Beardsley v. Isom*, 828 F.Supp. 397 (E.D.Va.1993) (finding that improper retaliation stemming from a report of sexual harassment did not support intentional infliction of emotional distress claim); *Harris v. Norfolk and Western Ry. Co.*, 720 F.Supp. 567 (W.D.Va. 1989) (finding that allegedly discriminatory demotion did not satisfy Virginia standard for intentional infliction of emotional distress). Since no behavior is alleged that is sufficiently outrageous and severe to sustain this claim, it must be dismissed.

In summary, for the reasons set out above, AT & T's motion to dismiss is granted as to Count III and denied as to Counts I and II. An appropriate order has entered.